IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH COLELLA, individually and on behalf of other similarly situated persons,<br><br>    Plaintiff,<br><br>    v.<br><br>ATKINS NUTRITIONALS, INC.,<br><br>    Defendant | **CASE NO.:** 17-cv-5867<br><br>**Jury Demand** |

**CLASS ACTION COMPLAINT**

Atkins Nutritionals products falsely and inexplicably feature a "Net Carbs" label that excludes an entire category of carbohydrates (carbs): *sugar alcohols*. Atkins has publicly admitted that its artificial definition of "Net Carbs" is indefensible, yet refuses to fix its labels and continues to mislead New Yorkers. Plaintiff thus brings this Complaint against the Defendant for money damages and injunctive relief on his behalf and on behalf of all other persons similarly situated New Yorkers who purchased Atkins Nutritionals products. In support thereof, Plaintiff respectfully submits the following:

**NATURE OF THE CASE**

1. This case concerns the labeling used by Atkins Nutritionals, Inc. when it touts its products as having low "net carbs" by artificially subtracting a whole category of carbs (sugar alcohols from the definition of carbs.

2. When it calculates "net carbs" for labeling purposes, Atkins subtracts carbohydrates associated with sugar alcohols from its calculation, even though sugar alcohols contribute to a product's carbohydrates and impact blood sugar. Atkins itself has characterized the term "net carbs" as "imprecise."

3. Simply put, the calculation that Atkins employs is knowingly false and misleading, meaning that the labeling and representations regarding net carbs violates New York consumer protection laws.

4. Plaintiff thus brings this suit on his own behalf, and on behalf of other affected citizens of the State of New York, to obtain all remuneration available under the law and at equity.

## PARTIES

5. Plaintiff Joseph Colella is an adult domiciled in Queens County, New York and is therefore a citizen of the State of New York.

6. Defendant is a corporation organized under the laws of Colorado with headquarters located at 1050 17th Street, Ste. 1000, Denver, Colorado 80265-1001 and is therefore a citizen of the State of Colorado.

## JURISDICTION AND VENUE

7. The United States District Court for the Eastern District of New York has subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

8.      This Court has personal jurisdiction over Atkins because Atkins is registered to conduct business and does, in fact, regularly conduct business, in New York.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Background

10.     Defendant knowingly misleads consumers. As a leading low-carbohydrate lifestyle company, Atkins prominently touts the supposedly low (or zero) carb benefits of its products. But the company touts "net" carbs, a misleading term that subtracts sugar alcohols. Sugar alcohols have a carbohydrate impact that should be included in any carbohydrate calculation.

11.     Atkins made these false, misleading statements to deceive consumers into purchasing its products under the belief that they are extremely low in carbohydrates, when, in fact, they are not.

12.     Defendant Atkins is the eponymous company formed by the late Dr. Robert Atkins (hereinafter "Dr. Atkins") to promote the sale of books and food items related to the "Atkins Diet," a low- to zero-carbohydrate diet.

13.     To follow the Atkins Diet, users must forsake carbs which are present in most processed foods in the average American's diet. In 1999, at the time the Atkins Diet was gaining sweeping popularity, the late Dr. Atkins informed adherents that the most popular artificial sweeteners that American manufacturers use to replace conventional sugars were not approved for use in the Atkins Diet.

14. Dr. Atkins wrote, "Sweeteners such as sorbitol, mannitol, and other hexitols [i.e., sugar alcohols] *are not allowed*." See Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (Rev.) at p. 100 (1999).

15. In 2002, Dr. Atkins revised this prohibition. He stated, "certain sugar alcohols such as maltitol do not affect blood sugar and are acceptable." Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (3rd ed.) at p. 112 (2002).

16. What changed? Between 1999 and 2002, Atkins had established a growing line of food products that included sugar alcohols, including the products at issue in this case.

**B. Atkins' Specific Claims Regarding "Net Carbs"**

17. Atkins' website at www.atkins.com explains its definition of "net carbs" as "the total carbohydrate content of the food minus the fiber content and sugar alcohols." It further claims, "The Net Carbs number reflects the grams of carbohydrate the significantly impact your blood sugar level and therefore are the only carbs you need to count when you do Atkins."

18. Atkins claims its "Net Carb" calculation is based on "science."

19. Atkins further claims:

> Net Carbs are the carbohydrates that significantly impact the blood-sugar level; they're the only carbs that count when following Atkins. The good news is that the grams of carbohydrate in fiber, glycerine, and sugar alcohols don't break down and convert to blood sugar and need not be counted by people on the ANA. … So Net Carbs represent the number of grams of total carbohydrate minus those that do not impact blood sugar.[1]

---

[1] *See* http://www.atkins.com/Science/Articles---Library/Carbohydrates/The-Blood-Sugar-Roller-Coaster--Excess-Carbs,-Exce.aspx

4

20. Atkins manufactures, distributes, markets, advertises, and sells products containing sugar alcohols as replacements for ordinary carbohydrates that it claims do not impact blood sugar or have any carbohydrate impact.

21. Maltitol is the sugar alcohol of Atkins' choice. For example, it is a leading ingredient in the following Atkins' products: (a) Blueberry Greek Yogurt Bar; (b) Chocolate Peanut Butter Pretzel Bar; (c) Strawberry Almond Bar; (d) Cinnamon Bun Bar; (e) Chocolate Chip Granola Bar; (f) Chocolate Peanut Butter Bar; (g) Cookies n' Crème Bar; (h) Mudslide Bar; (i) Chocolate Chip Cookie Dough Bar; (j) Triple Chocolate Bar; (k) Caramel Chocolate Peanut Nougat Bar; (l) Caramel Double Chocolate Crunch Bar; (m) Cashew Trail Mix Bar; (n) Coconut Almond Delight Bar; (o) Dark Chocolate Almond Coconut Crunch Bar; (p) Caramel Chocolate Nut Roll; (q) Dark Chocolate Decadence Bar; (r) Chocolate Chip Crisp Bar; (s) Chocolate Hazelnut Bar; (t) Chocolate Oatmeal Fiber Bar; (u) Cranberry Almond Bar; (v) Chocolate Covered Almonds; (w) Chocolate Candies; (x) Chocolate Peanut Candies; (y) Caramel Nut Chew Bar; (z) Chocolate Caramel Mousse Bar; (aa) Chocolate Coconut Bar; (bb) Nutty Fudge Brownie; (cc) Peanut Butter Cups, and (dd) Peanut Caramel Cluster Bar.

22. The Atkins "net carb" formula subtracts all grams of sugar alcohol from carbohydrates. For example, its "Chocolate Candies" product claims to have just "1g Net Carb."



23. The ingredients panel for Atkins' Chocolate Candies reveals the following:

**Nutrition Facts**
Serving Size 1 pack (28g)

**Amount Per Serving**
Calories 110     Fat Cal. 60

| | % Daily Value* |
|---|---|
| **Total Fat** 7g | 11% |
| Saturated Fat 4.5g | 23% |
| Trans Fat 0g | |
| **Cholesterol** <5mg | 1% |
| **Sodium** 5mg | 0% |
| **Potassium** 60mg | 2% |
| **Total Carbohydrate** 19g | 6% |
| Dietary Fiber 4g | 16% |
| Sugars 1g | |
| ★ Sugar Alcohols 14g | |
| **Protein** 1g | 1% |

Vitamin A 0% • Vitamin C 0%
Calcium 2% • Iron 2%

Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Saturated Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Potassium | | 3,500mg | 3,500mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |
| Protein | | 50g | 65g |

★ Sugar Alcohols total includes 0g of glycerin.

INGREDIENTS: CHOCOLATE COATING [MALTITOL, COCOA BUTTER, INULIN, UNSWEETENED CHOCOLATE, WHOLE MILK POWDER, MILK FAT, COCOA POWDER (PROCESSED WITH ALKALI), SOY LECITHIN, VANILLA, NATURAL FLAVORS, SUCRALOSE], MALTITOL, LESS THAN 1% OF PURE VANILLA EXTRACT, CONFECTIONER'S GLAZE, CARNAUBA WAX, BEESWAX, TITANIUM DIOXIDE COLOR, YELLOW 5 LAKE, RED 40 LAKE, BLUE 1 LAKE, BLUE 2 LAKE, YELLOW 6 LAKE, YELLOW 6, GUM ARABIC.   FR01
CONTAINS MILK AND SOY.
THIS PRODUCT IS MANUFACTURED IN A FACILITY THAT USES PEANUTS, OTHER TREE NUTS AND WHEAT.

24.     Thus, Atkins' starts with 19g of total carbs then subtracts 4g of Dietary Fiber and 14g of Sugar Alcohols to arrive at a Net Carbs claim of just 1 gram. The ingredient list reveals "maltitol" is the largest content of the product.

25.     By this calculation, Atkins assigns a carbohydrate value of zero to maltitol and any other sugar alcohols for this product.

26.     But this method of calculation conflicts with the method originally espoused by Dr. Atkins in his books. Indeed, Dr. Atkins stated that to arrive at net carbs, an individual should subtract only carbohydrates associated with fiber. He stated: "Basically, you can deduct the grams of fiber from the food's total carb count. I call the net number of grams, 'The carbs that count when you do Atkins.'" Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (3rd ed.) at p. 68

7

(2002). He further elaborated, "And determining which carbs count is simple: Check the total fiber grams listed on the food label and subtract that number from the total grams of carbohydrate listed." *Id.* at p. 69. Thus, even Dr. Atkins uses a different carbohydrate calculation than that used by Atkins in its labeling.

27. Atkins does not disclose the conflict between Dr. Atkins' espoused method of calculating "net carbs" and the method used by the company.

### C. Sugar Alcohols Retain Significant Energy Value

28. Contrary to Atkins' claims, the authoritative scientific research on sugar alcohols, particularly maltitol, shows that they continue to have a significant impact on blood sugar levels.

29. The Diabetes Teaching Center at the University of California, San Francisco puts it best, "[D]on't be fooled – sugar alcohols are still a form of carbohydrate, and they still affect your blood sugar levels, if not as dramatically."[2]

30. Similarly, Dr. Regina Castro of the Mayo Clinic warns consumers should "be cautious with sugar alcohols" because they "can increase your blood sugar level."[3]

31. To Plaintiffs' knowledge, no independent scientist, doctor, or researcher agrees with Atkins' assertion that maltitol and other sugar alcohols have a net energy value of zero. Atkins conceals this fact from consumers, and does not disclose this fact in its labeling or representations to consumers.

---

[2] See http://dtc.ucsf.edu/living-with-diabetes/diet-and-nutrition/understanding-carbohydrates/counting-carbohydrates/learning-to-read-labels/counting-sugar-alcohols/.

[3] See http://www.mayoclinic.org/diseases-conditions/diabetes/expert-answers/artificial-sweeteners/faq-20058038.

32. In the study "Sugar Alcohols and Diabetes: A Review,"[4] Dr. Thomas Wolever explained:

> Some people may believe that products sweetened with sugar alcohols allow for more variety in food choices, and, hence, increased quality of life for people with diabetes. However, there is *no evidence* that sugar alcohol-sweetened products have any benefit on long-term glycemic control in people with diabetes.
>
> …
>
> The rationale behind the use of sugar-alcohol sweetened products for weight management is that they reduce both the energy and sugar contents of confectionary. However, the reduction in energy content is not large[.] … Most sugar alcohols have an energy content 1.0 to 2.0 kcal/g less than sucrose or other carbohydrates, and since tolerance for sugar alcohol intake is limited, their impact on overall energy balance is likely to be, at most, approximately 20 to 40 kcal/day.

Thomas Wolever, M.D. Ph.D., "Sugar Alcohol and Diabetes: A Review," Canadian Journal of Diabetes 2002; 26(4): 356-362.

33. Ordinary carbs have an energy value of approximately four calories per gram.

34. Maltitol has an energy value of approximately three calories per gram, 25 percent less than the energy value of an ordinary carb.[5]

35. Dr. Wolever found that 50 to 75 percent of maltitol is absorbed into the body.

36. By multiplying the energy value by the percent of the sugar alcohol absorbed by the body, one can arrive at the carb value of a sugar alcohol relative to an ordinary carbohydrate. Thus, total carbohydrate energy consumed per gram of maltitol is actually between 38 to 56 percent of the carbohydrate value of table sugar or ordinary carbohydrates.

---

[4] See http://archive.diabetes.ca/files/SugarAlcohols--Wolever--CJDDecember2002.pdf.

[5] See http://www.inspection.gc.ca/food/labelling/food-labelling-for-industry/nutrition-labelling/elements-within-the-nutrition-facts-table/eng/1389206763218/1389206811747?chap=1.

37. Thus, according to Dr. Wolever's more scientifically sound calculation, the true "net carbs" in Atkins "Chocolate Candies" product would be between 6.32 and 8.84 grams instead of the 1 gram fraudulently claimed by Atkins. Accordingly, just as one example, the "Chocolate Candies" product has a "net carb" value of between 632 to 884 percent times as high as that claimed by Atkins.

38. According to the Diabetes Teaching Center at the University of California, San Francisco, "When counting carbohydrates for products made with sugar alcohols, [one should] subtract half of the grams of sugar alcohol listed on the food label from the total grams of carbohydrate."[6]

39. Thus, experts agree: carbohydrates derived from sugar alcohols (1) impact blood sugar, and (2) should be included in any net carbohydrate count for products.

40. Atkins conceals the fact that sugar alcohols impact blood sugar from consumers.

41. Atkins conceals the fact that sugar alcohols should be included in the net carb count for products.

**D. The Term "Net Carbs" Is Grossly Misleading**

42. The FDA has not regulated the phrase "net carb" but has affirmatively stated that it "ha[s] concerns that [the] term may be misleading to consumers."[7]

43. The FDA admonished a different company for failing to include maltitol in its carbohydrate count on its label. In a June 20, 2001 letter concerning the product Carbolite, the FDA stated:

---

[6]   *See* http://www.diabetes.org/food-and-fitness/food/what-can-i-eat/understanding-carbohydrates/sugar-alcohols.html.

[7]   *See* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2014/ucm407036.htm.

> The product is further misbranded because the label bears the claim "Zero Carbohydrate" and the statement "Maltitol . . . . has been omitted from the total carbohydrate content . . . ." Maltitol is a carbohydrate and must be included in the value declared for "Total Carbohydrate" . . .

*See* Food and Drug Administration Warning Letter ONPLDS 20-01 (June 20, 2001).

44. Though the FDA does not formally regulate use of the phrase "net carb," its Canadian counterpart has found that the phrase is "not acceptable due to lack of scientific consensus on … definition and [its] potential to mislead consumers."[8]

45. In another study, Dr. Wolever articulated the same concerns. He wrote, "Food labels of products containing sugar alcohols can be confusing." Thomas Wolever, M.D. Ph.D., "Sugar Alcohol and Diabetes: A Review," Canadian Journal of Diabetes 2002; 26(4): 356-362 at 360 (2002). He elaborated that "individuals who use product labels to count carbohydrates could potentially overestimate the amount of insulin to use for a carbohydrate load. Complicating this issue is a lack of consistent labelling, both nationally and internationally, for products containing sugar alcohols." *Id.* at 361.

46. In 2004, Dr. Wolever told the New York Times, "It's a big misconception to say maltitol does not raise blood sugar." Instead, he explained, "Sugar alcohols have come on the market quite aggressively and it's very confusing. The science is not good."[9]

47. In 2004, Atkins appeared to agree with the consensus that food labels concerning sugar alcohols were misleading. The company announced in 2004 that it would discontinue using the term "net carbs" on its food labels because the term is "imprecise." Sarah Ellison, *Atkins Labels*

---

[8] *See* http://www.inspection.gc.ca/food/labelling/food-labelling-for-industry/nutrition-labelling/carbohydrate-claims/eng/1409844949900/1409845010355.
[9] *See* Burros, Marian, "New 'Low-Carb' Foods Aren't All-You-Can-Eat, N.Y. Times, Apr. 14, 2004, available at http://www.nytimes.com/learning/students/pop/20040415snapthursday.html

*Will Drop Term 'Net Carbs'*, THE WALL STREET JOURNAL, Oct. 6, 2004 (available at http://www.wsj.com/articles/SB109700319191636814). According to the article:

> As low-carb products have proliferated, the food industry has faced increasing skepticism about their nutrient content and labeling. For example, many companies, including Atkins at one time, calculate a products "net carbs" by subtracting grams of fiber and sugar alcohols from the total carbohydrate grams. That calculation allows food makers to cook up starchy, sweet products like brownies, pastries and candy, and call them "low carb." **But one thing the calculation doesn't take into account is that sugar alcohols raise blood-sugar levels, just as "net carbs" do.**

*Id.* (emphasis added).

48. Nonetheless, despite acknowledging that the term "net carbs" is "imprecise" – particularly when it subtracts sugar alcohols from its consideration – Atkins continues to use the term in its labeling and continues to use the formulation that it publicly rejected in 2004.

49. Atkins' "net carb" claims are false, misleading, and likely to deceive consumers, such as Plaintiff and members of the Class, in that Atkins' products have multiple times the level of carbohydrates as labeled by Atkins' net carb claim because sugar alcohol continues to have an effect on blood sugar and calories in direct contradiction to Atkins' claims.

### E. The Plaintiff's and Class Members' Experiences

50. Plaintiff is domiciled in Queens County, New York.

51. Plaintiff has purchased Atkins meal bars and snack bars at multiple locations in the State of New York, specifically in this District.

52. Plaintiff would not have purchased the products if he had known that the Atkins products misleadingly defined "net carbs" to exclude sugar alcohols, which were up to eight times higher than the amount claimed by Atkins.

53. Furthermore, ordinary and reasonable consumers would not purchase Atkins' products containing the "net carbs" designation if they knew the facts and information that Atkins concealed from consumers.

54. Plaintiff and members of the Class have been economically damaged by their purchase of Atkins' products because they have significantly more carbohydrates that affect the blood sugar and weight gain than the "net carb" amount claimed by Atkins. In this respect, Plaintiff and members of the Class have overpaid for Atkins products containing the "net carbs" calculation that omits sugar alcohols from its calculation.

55. At a minimum, Plaintiff contends that Defendant should cease labeling its products with a "net carb" calculation that assigns a value of zero to sugar alcohols.

## CLASS ACTION ALLEGATIONS

56. Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following proposed Class:

> Citizens of New York who have purchased Atkins' products labeled and marketed with the "net carbs" calculation that contained sugar alcohols in the State of New York.

57. Excluded from the Class are Defendant, any affiliate, parent, employee or subsidiary of Defendant; any officer, director, or employee of Defendant; anyone employed by counsel for Plaintiff in this action; and any Judge to whom this case is assigned as well as his or her immediate family.

58. This action has been brought and may be properly maintained as a class action under Federal Rule of Civil Procedure 23.

59. **Numerosity of the Class – Rule 23(a)(1).** Class members are so numerous that their individual joinder is impracticable.

13

60. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), 23(b)(3).** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

   a. Whether Atkins misrepresented / concealed the sugar alcohol content on the label of its products identified with the "net carbs" designation;

   b. Whether Atkins was aware of its deception and/or omissions;

   c. Whether Atkins's deception is material;

   d. Whether Atkins concealed the true nature of its product;

   e. Whether Atkins profited from its concealment;

   f. Whether Atkins had a duty to disclose the correct sugar alcohol content and/or true identity of its products with the "net carbs" label;

   g. Whether Atkins's conduct harmed Plaintiff and the Class;

   h. Whether Atkins has engaged in unlawful, unfair, or fraudulent business practices in violation of New York law;

   i. Whether Plaintiffs and the other Class members are entitled to equitable relief, including declaratory relief, restitution, and/or rescission.

61. **Typicality – Rule 23(a)(3).** Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff purchased Atkins products bearing the "net carbs" label that contained sugar alcohols.

62. **Adequacy of Representation – Rule 23(a)(4).** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced

in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Classes.

63. **Superiority - Rule 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

### COUNT ONE

### Violation of N.Y. Gen. Bus. Law § 349
### (Deceptive and Unfair Trade Practices)

64. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

65. Plaintiff asserts this cause of action on behalf of himself and the proposed Class against Defendant under New York Gen. Bus. Law § 349, which protects consumers against deceptive acts or practices in the conduct of any business.

66. Throughout the class period, Atkins engaged in deceptive business acts and/or practices by:

    a. Marketing, advertising, and selling products with the "net carbs" label without disclosing and omitting the true carbohydrate count of those products; and

    b. Affirmatively asserting that sugar alcohols had effectively zero impact on blood sugar, by subtracting all sugar alcohols from its "net carb" calculation;

    c. Marketing, advertising, and selling products using the "Atkins" name without disclosing and omitting that the products were not consistent with the philosophy of the diet and company's eponymous founder.

67. Defendant's acts and omissions described herein misled Plaintiff and class members about facts of the product that could not reasonably be known by them.

68. Defendant's deceptive acts and omissions described herein were made knowingly with the intent to cause Plaintiff and class members to underestimate the carbohydrate impact of Defendant's products.

69. Defendant's deceptive acts and omissions were directed at consumers.

70. As a direct result of Atkins's deceptive business acts and/or practices, Plaintiff and members of the Class suffered injury in fact and lost money or property.

71. Defendant's conduct in employing these deceptive business acts and/or practices was malicious, willful, wanton, and outrageous such as to shock the conscious of the community and therefore warrants imposition of punitive damages in an amount to be determined by a jury.

72. Defendant's deceptive business acts and practices impact the public interest because Plaintiff and class members were injured in exactly the same way as thousands of others purchasing the products.

73. Defendant's deceptive business acts and/or practices are likely to mislead reasonable consumers in the future. Had Plaintiff and class members known the true facts about the products, they would not have purchased them at their inflated price.

74. Accordingly, Plaintiff, on behalf of himself and the Class, seeks the greater of $50 per class member or actual damages, whichever is greater, plus attorney's fees.

75. Plaintiff also seeks an injunction to enjoin the deceptive practices alleged herein.

## COUNT TWO

### Violation of New York Gen. Bus. Law § 350
### (False Advertising)

76. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

77. Plaintiff asserts this cause of action on behalf of himself and the Class against Defendant under GBL § 350, which declares unlawful "[f]alse advertising in the conduct of any business, trade, or commerce." As defined in the Act, false advertising includes "advertising, including labeling of a commodity … if such advertising is misleading in a material respect" taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity. …" GBL § 350-a(1).

78. Defendant has been and continues to be engaged in the "conduct of … business, trade, or commerce" under GBL § 350.

79. Throughout the class period, Defendant caused to be made and disseminated throughout New York statements that were untrue and misleading. These statements were made on the Defendant's product labels, its website, and in general advertising.

80. Defendant knew, or, in the exercise of reasonable care, should have known that its statements were untrue and misleading to Plaintiff and class members.

17

81. Defendant's untrue and misleading statements were material and substantially uniform in their content, presentations, and impact upon Plaintiff and class members.

82. Defendant's untrue and misleading statements were material and likely to deceive a reasonable consumer. As a direct result of Atkins's false advertising, Plaintiff and members of the Class suffered injury in fact and lost money or property.

80. Defendant's conduct in employing these deceptive business acts and/or practices was malicious, willful, wanton, and outrageous such as to shock the conscious of the community and therefore warrants imposition of punitive damages in an amount to be determined by a jury.

81. Accordingly, Plaintiff on behalf of himself and the Class, seek relief against Atkins in the form of an order prohibiting Atkins from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

## COUNT THREE

### Breach of Express Warranty

82. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

83. Plaintiff asserts this cause of action on behalf of himself and the proposed Class against Defendant for breach of express warranty.

84. Defendant provided Plaintiff and class members with written express warranties that its products contained minimal "net carbs" and that any sugar alcohols contained therein had minimal and effectively no impact on blood sugar. These "Net Carb" claims are affirmations of fact that were a basis of the bargain between Plaintiff (and class members) and Defendant.

85. Defendant's Net Carb claims created an express warranty that the goods would conform to Defendant's stated promises.

86. Defendant's Net Carb claims were material to Plaintiff and class members in the decision to purchase Defendant's products.

87. Defendant breached its express warranty by not providing goods with the qualities promised.

88. As a direct result of Defendant's breach, Plaintiff and members of the Class suffered injury in fact and lost money or property.

89. Defendant's conduct in employing these deceptive business acts and/or practices was malicious, willful, wanton, and outrageous such as to shock the conscious of the community and therefore warrants imposition of punitive damages in an amount to be determined by a jury.

90. Accordingly, Plaintiff on behalf of himself and the Class, seek relief against Atkins in the form of an order prohibiting Atkins from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, requests judgment and relief as follows:

A. For an order certifying the proposed Class, and appointing Plaintiff and his counsel of record to represent the proposed Class;

B. For an order declaring that Atkins has violated N.Y. Gen. Bus. Law § 349;

C. For an order declaring that Atkins has violated N.Y. Gen. Bus. Law § 350;

D. For an order declaring that Atkins has breached an express warranty;

E. For an order awarding Plaintiff and Class members damages and statutory damages in an amount to be proven at trial, including punitive damages, together with pre-trial and post-trial interest thereon;

F. For an order awarding Plaintiff and Class members restitution, disgorgement, or other equitable relief as the Court deems proper;

G. For an order awarding Plaintiff and the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

H. For an order awarding such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and all similarly situated persons, demands a trial by jury on all issues that are triable to a jury.

Dated: October 6, 2017

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

*/s/ David Straite*
David A. Straite
850 Third Avenue
New York, NY 10022
*dstraite@kaplanfox.com*
Tel.: 212.687.1980
Fax: 212.687.7714

Matthew L. Dameron
(*pro hac vice* to be sought)
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel.: 816.945.7110
Fax: 816.945.7118
*matt@williamsdirks.com*

Jay Barnes
(*pro hac vice* to be sought)
**BARNES & ASSOCIATES**
219 E. Dunklin Street
Jefferson City, MO 65101
Tel.: 573.634.8884
Fax: 573.635.6291
*Jaybarnes5@zoho.com*