# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

JOSEPH COLELLA, individually and on
behalf of other similarly situated persons,

      Plaintiff,

      v.

ATKINS NUTRITIONALS, INC.,


      Defendant

**CASE NO.:** 17-cv-5867-KAM-SJB

**Jury Demand**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff brings this First Amended Complaint against the Defendant on his behalf and on behalf of all other persons similarly situated who purchased Atkins Nutritionals products that claimed that sugar alcohols have no impact on blood sugar.  In support thereof, Plaintiff respectfully submits the following:

## NATURE OF THE CASE

1.     This case concerns the labeling used by Atkins Nutritionals, Inc. when it touts its products as having low "net carbs" by artificially subtracting a whole category of carbs (sugar alcohols) from the definition of carbs.  Atkins' labeling and marketing schemes claim its products have low "Net Carbs" even though the products contain sugar alcohols.

2.     When it calculates "net carbs" for labeling purposes, Atkins subtracts carbohydrates associated with sugar alcohols from its calculation. Atkins' formula is based on its claim that sugar alcohols minimally impact blood sugar. However, this is false, and even Atkins has characterized the term "net carbs" as "imprecise."

3.      Simply put, Atkins' claim that sugar alcohols, particularly maltitol, minimally impact blood sugar and thus should not be included in a consumer's carbohydrate count is wrong, meaning that the labeling and representations regarding Net Carbs are also wrong. Atkins affirmatively misrepresents and conceals these facts from consumers in violation of New York law.

4.      Plaintiff thus brings this suit on his own behalf, and on behalf of other affected citizens of the State of New York, to obtain all remuneration available under the law and at equity.

## PARTIES

5.      Plaintiff Joseph Colella is an adult domiciled in Queens County, New York and is therefore a citizen of the State of New York.

6.      Defendant is a corporation organized under the laws of Colorado with headquarters located at 1050 17th Street, Ste. 1000, Denver, Colorado 80265-1001 and is therefore a citizen of the State of Colorado.

## JURISDICTION AND VENUE

7.      The United States District Court for the Eastern District of New York has subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").  The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

8.      This Court has personal jurisdiction over Atkins because Atkins is registered to conduct business and does, in fact, regularly conduct business, in New York.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Background

10.      Defendant Atkins has concealed material facts from consumers in that it failed to disclose that sugar alcohols impact blood sugar.

11.      Atkins also made false, misleading statements to deceive consumers into purchasing its products when it advised consumers that sugar alcohols have a "minimal" impact on blood sugar – a contention that is unsupported by the scientific evidence. Atkins also misbranded its products when it conveyed to consumers that the products contain "Only" a certain number of "Net Carbs."

12.      Defendant Atkins is the eponymous company formed by the late Dr. Robert Atkins (hereinafter "Dr. Atkins") to promote the sale of books and food items related to the "Atkins Diet," a low- to no-carbohydrate diet.

13.      To follow the Atkins Diet, users must forsake carbohydrates which are present in most processed foods in the average American's diet. In 1999, at the time the Atkins Diet was gaining sweeping popularity, the late Dr. Atkins informed adherents that the most popular artificial sweeteners that American manufacturers use to replace conventional sugars were not approved for use in the Atkins Diet.  Dr. Atkins wrote, "Sweeteners such as sorbitol, mannitol, and other hexitols [i.e. sugar alcohols] are not allowed." *See* Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (Rev.) at p. 100 (1999).

14.     In 2002, Dr. Atkins revised this prohibition.  He stated, "certain sugar alcohols such as maltitol do not affect blood sugar and are acceptable." Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (3rd ed.) at p. 112 (2002).

15.     What changed? Between 1999 and 2002, Atkins established a growing line of food products that included sugar alcohols, including the products at issue in this case.

**B. Atkins' Specific Claims Regarding "Net Carbs"**

16.     Atkins' website at www.atkins.com explains its definition of "Net Carbs" as "the total carbohydrate content of the food minus the fiber content and sugar alcohols." It further claims, "The Net Carbs number reflects the grams of carbohydrate the significantly impact your blood sugar level and therefore are the only carbs you need to count when you do Atkins."

17.     Atkins claims its "Net Carb" calculation is based on "science."

18.     Atkins further claims:

Net Carbs are the carbohydrates that significantly impact the blood-sugar level; they're the only carbs that count when following Atkins. The good news is that the grams of carbohydrate in fiber, glycerine, and sugar alcohols don't break down and convert to blood sugar and need not be counted by people on the ANA. … So Net Carbs represent the number of grams of total carbohydrate minus those that do not impact blood sugar.[1]

19.     Atkins manufactures, distributes, markets, advertises, and sells products containing sugar alcohols as replacements for ordinary carbohydrates.

---

[1]     *See* http://www.atkins.com/Science/Articles---Library/Carbohydrates/The-Blood-Sugar-Roller-Coaster--Excess-Carbs,-Exce.aspx. Atkins removed this page from its website after litigation commenced. It can be found via the Internet Wayback Machine at:
https://web.archive.org/web/20140930191256/http://www.atkins.com/Science/Articles---Library/Carbohydrates/The-Blood-Sugar-Roller-Coaster--Excess-Carbs,-Exce.aspx.

20.     Maltitol is the sugar alcohol of Atkins' choice. For example, it is (or has been)[2] a leading ingredient in the following Atkins' products: (a) Blueberry Greek Yogurt Bar; (b) Chocolate Peanut Butter Pretzel Bar; (c) Strawberry Almond Bar; (d) Cinnamon Bun Bar; (e) Chocolate Chip Granola Bar; (f) Chocolate Peanut Butter Bar; (g) Cookies n' Crème Bar; (h) Mudslide Bar; (i) Chocolate Chip Cookie Dough Bar; (j) Triple Chocolate Bar; (k) Caramel Chocolate Peanut Nougat Bar; (l) Caramel Double Chocolate Crunch Bar; (m) Cashew Trail Mix Bar; (n) Coconut Almond Delight Bar; (o) Dark Chocolate Almond Coconut Crunch Bar; (p) Caramel Chocolate Nut Roll; (q) Dark Chocolate Decadence Bar; (r) Chocolate Chip Crisp Bar; (s) Chocolate Hazelnut Bar; (t) Chocolate Oatmeal Fiber Bar; (u) Cranberry Almond Bar; (v) Chocolate Covered Almonds; (w) Chocolate Candies; (x) Chocolate Peanut Candies; (y) Caramel Nut Chew Bar; (z) Chocolate Caramel Mousse Bar; (aa) Chocolate Coconut Bar; (bb) Nutty Fudge Brownie; (cc) Peanut Butter Cups; (dd) Peanut Caramel Cluster Bar; and (ee) Sweet & Salty Trail Mix.

---

[2]     Defendant began removing maltitol from products after the commencement of litigation.

21.     The Atkins "Net Carb" formula subtracts all grams of sugar alcohol from carbohydrates. For example, its "Chocolate Candies" product claims to have just "1g Net Carb."



22.     The ingredients panel for Atkins' Chocolate Candies reveals the following:



23.     Thus, Atkins' starts with 19g of total carbs then subtracts 4g of Dietary Fiber and 14g of Sugar Alcohols to arrive at a Net Carbs claim of just 1 gram. The ingredient list reveals "maltitol" is most significant ingredient of the product.

24.     By this calculation, Atkins assigns a carbohydrate value of zero to maltitol and any other sugar alcohols for this product.

25.     On the same product, Atkins also includes the following text box on the products packaging:



26.     An identical or substantially similar claim appears on every Atkins' product identified in paragraph 20.

27.     But, as described below, sugar alcohols do impact blood sugar more than a minimal amount, and Atkins' "Net Carb" count does not assist consumers with tracking carbohydrates that impact blood sugar because it omits sugar alcohols from its equation.

28.     Further, this claim conflicts with the diet espoused by Dr. Atkins in his books. Indeed, Dr. Atkins stated that to arrive at net carbs, an individual should subtract only

carbohydrates associated with fiber. He stated: "Basically, you can deduct the grams of fiber from the food's total carb count. I call the net number of grams, 'The carbs that count when you do Atkins.'" Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (3rd ed.) at p. 68 (2002).  He further elaborated, "And determining which carbs count is simple: Check the total fiber grams listed on the food label and subtract that number from the total grams of carbohydrate listed." *Id.* at p. 69. Thus, even Dr. Atkins uses a different carbohydrate calculation than that used by Atkins in its labeling.

29.     Atkins does not disclose the conflict between Dr. Atkins' espoused method of calculating "net carbs" and the method used by the company.

**C. Sugar Alcohols Retain Significant Energy Value**

30.     Contrary to Atkins' claims, the authoritative scientific research on sugar alcohols, particularly maltitol, shows that they continue to have a significant impact on blood sugar levels.

31.     The Diabetes Teaching Center at the University of California, San Francisco puts it best, "[D]on't be fooled – sugar alcohols are still a form of carbohydrate, and they still affect your blood sugar levels, if not as dramatically."[3]

32.     Similarly, Dr. Regina Castro of the Mayo Clinic warns consumers should "be cautious with sugar alcohols" because they "can increase your blood sugar level."[4]

---

[3]     See http://dtc.ucsf.edu/living-with-diabetes/diet-and nutrition/understandingcarbohydrates/counting-carbohydrates/learning-to-read-labels/counting-sugar-alcohols/.

[4]     See http://www.mayoclinic.org/diseases-conditions/diabetes/expert-answers/artificialsweeteners/faq-20058038.

33.     To Plaintiff's knowledge, no independent scientist, doctor, or researcher agrees with Atkins' assertion that maltitol and other sugar alcohols have a net energy value of zero. Atkins conceals this fact from consumers, and does not disclose this fact in its labeling or representations to consumers.

34.     In the study "Sugar Alcohols and Diabetes: A Review,"[5] Dr. Thomas Wolever explained:

> Some people may believe that products sweetened with sugar alcohols allow for more variety in food choices, and, hence, increased quality of life for people with diabetes. However, there is *no evidence* that sugar alcohol-sweetened products have any benefit on long-term glycemic control in people with diabetes.
>
> …
>
> The rationale behind the use of sugar-alcohol sweetened products for weight management is that they reduce both the energy and sugar contents of confectionary. However, the reduction in energy content is not large[.] … Most sugar alcohols have an energy content 1.0 to 2.0 kcal/g less than sucrose or other carbohydrates, and since tolerance for sugar alcohol intake is limited, their impact on overall energy balance is likely to be, at most, approximately 20 to 40 kcal/day.

Thomas Wolever, M.D. Ph.D., "Sugar Alcohol and Diabetes: A Review," Canadian Journal of Diabetes 2002; 26(4): 356-362.

35.     Ordinary carbs have an energy value of approximately four calories per gram.

36.     Maltitol has an energy value of approximately three calories per gram, 25 percent less than the energy value of an ordinary carb.[6]

37.     Dr. Wolever found that 50 to 75 percent of maltitol is absorbed into the body.

---

[5]     See http://archive.diabetes.ca/files/SugarAlcohols--Wolever--CJDDecember2002.pdf.
[6]     See http://www.inspection.gc.ca/food/labelling/food-labelling-for-industry/nutrition-labelling/elements-within-the-nutrition-facts-table/eng/1389206763218/1389206811747?chap=1.

38.     By multiplying the energy value by the percent of the sugar alcohol absorbed by the body, one can arrive at the carb value of a sugar alcohol relative to an ordinary carbohydrate. Thus, total carbohydrate energy consumed per gram of maltitol is actually between 38 to 56 percent of the carbohydrate value of table sugar or ordinary carbohydrates.

39.     Thus, according to this scientifically sound calculation, the true "Net Carbs" in Atkins "Chocolate Candies" product would be between 6.32 and 8.84 grams instead of the 1 gram fraudulently claimed by Atkins. Accordingly, just as one example, the "Chocolate Candies" product has a "net carb" value of between 632 to 884 percent times as high as that claimed by Atkins.

40.     According to the Diabetes Teaching Center at the University of California, San Francisco, "When counting carbohydrates for products made with sugar alcohols, [one should] subtract half of the grams of sugar alcohol listed on the food label from the total grams of carbohydrate."[7]

41.     Thus, experts agree: carbohydrates derived from sugar alcohols (1) impact blood sugar, and (2) should be included in a carbohydrate count for products.

42.     But Atkins conceals the fact that sugar alcohols impact blood sugar from consumers and affirmatively misrepresents that opposite – that sugar alcohols have only a "minimal" impact on blood sugar.

**D. The Term "Net Carbs" Is Grossly Misleading**

43.     The FDA has not regulated the phrase "net carb" but has affirmatively stated that it

---

[7]     *See* http://www.diabetes.org/food-and-fitness/food/what-can-i-eat/understandingcarbohydrates/sugar-alcohols.html.

"ha[s] concerns that [the] term may be misleading to consumers."[8]

44.    The FDA admonished a different company for failing to include maltitol in its carbohydrate count on its label. In a June 20, 2001 letter concerning the product Carbolite, the FDA stated:

> The product is further misbranded because the label bears the claim "Zero Carbohydrate" and the statement "Maltitol . . . . has been omitted from the total carbohydrate content . . . ." Maltitol is a carbohydrate and must be included in the value declared for "Total Carbohydrate" . . .

*See* Food and Drug Administration Warning Letter ONPLDS 20-01 (June 20, 2001).

45.    Though the FDA does not formally regulate use of the phrase "net carb," its Canadian counterpart has found that the phrase is "not acceptable due to lack of scientific consensus on … definition and [its] potential to mislead consumers."[9]

46.    In another study, Dr. Wolever articulated the same concerns. He wrote, "Food labels of products containing sugar alcohols can be confusing." Thomas Wolever, M.D. Ph.D., "Sugar Alcohol and Diabetes: A Review," Canadian Journal of Diabetes 2002; 26(4): 356-362 at 360 (2002). He elaborated that "individuals who use product labels to count carbohydrates could potentially overestimate the amount of insulin to use for a carbohydrate load. Complicating this issue is a lack of consistent labelling, both nationally and internationally, for products containing sugar alcohols." *Id.* at 361.

---

[8] *See*
http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2014/ucm407036.htm.
[9]      *See* http://www.inspection.gc.ca/food/labelling/food-labelling-for-industry/nutritionlabelling/carbohydrate-claims/eng/1409844949900/1409845010355.

47.     In 2004, Dr. Wolever told the New York Times, "It's a big misconception to say maltitol does not raise blood sugar." Instead, he explained, "Sugar alcohols have come on the market quite aggressively and it's very confusing. The science is not good."[10]

48.     In 2004, Atkins appeared to agree with the consensus that food labels concerning sugar alcohols were misleading. The company announced in 2004 that it would discontinue using the term "Net Carbs" on its food labels because the term is "imprecise." Sarah Ellison, *Atkins Labels*

*Will Drop Term 'Net Carbs'*, THE WALL STREET JOURNAL, Oct. 6, 2004 (available at http://www.wsj.com/articles/SB109700319191636814). According to the article:

> As low-carb products have proliferated, the food industry has faced increasing skepticism about their nutrient content and labeling. For example, many companies, including Atkins at one time, calculate a products "net carbs" by subtracting grams of fiber and sugar alcohols from the total carbohydrate grams. That calculation allows food makers to cook up starchy, sweet products like brownies, pastries and candy, and call them "low carb." **But one thing the calculation doesn't take into account is that sugar alcohols raise blood-sugar levels, just as "net carbs" do.**

*Id.* (emphasis added).

49.     Nonetheless, despite acknowledging that the term "net carbs" is "imprecise" and that sugar alcohols impact blood sugar levels, Atkins continues to use the term in its labeling and to tell consumers that sugar alcohols have a "minimal" impact on blood sugar levels – a conclusion that it publicly rejected in 2004.

50.     Additionally, Atkins uses the phrase "Only Xg Net Carbs" in its labeling on products identified in paragraph 20. Atkins' use of the term "Only" implies a claim concerning the

---

[10]     *See* Burros, Marian, "New 'Low-Carb' Foods Aren't All-You-Can-Eat, N.Y. Times, Apr. 14, , available at  http://www.nytimes.com/learning/students/pop/20040415snapthursday.html

nutrients of Atkins' products, and improperly suggests that nutrients (i.e. "net carbs") are absent or present in a certain amount. Because the FDA has not defined what constitutes an acceptable level to bear the label "Only" in the context of net carbs, Atkins' labels bearing that term are misbranded.

### E. Atkins Conceals Material Facts and Its Representations are False

51.    Atkins' "Net Carb" claims are false, misleading, and likely to deceive consumers, such as Plaintiffs and members of that Class, in that Atkins' products have multiple times the level of carbohydrates that impact blood sugar as labeled by Atkins' Net Carb claim because sugar alcohol continues to have an effect on blood sugar and calories in direct contradiction to Atkins' claims.

52.    Within the past two years, Plaintiff purchased the following Atkins' products at a Wal-Mart store in Nassau County, New York that have a "Net Carbs" designation but still include sugar alcohols: Chocolate Chip Cookie Dough Bar, Sweet & Salty Trail Mix, and Chocolate Peanut Candies. All of these products contain sugar alcohol (including maltitol), and the Net Carbs on each product wrongfully omit sugar alcohols from their calculation of carbs that impact blood sugar.

53.    The products that Plaintiff purchased contained the "Counting Carbs" box on the packaging identified in paragraph 25, *supra*. Thus, the products that Plaintiff purchased represented that sugar alcohols have only a "minimal" impact on consumers' blood sugar and that sugar alcohols are not a carbohydrate that "impact blood sugar." In this respect, the representations on Atkins' products purchased by Plaintiff were fraudulent, misleading, and concealed material facts (i.e. that sugar alcohols impact blood sugar).

54.     Moreover, the products that Plaintiff purchased contained the "Only Xg Net Carbs" representation, which impliedly suggested that the products contained net carbs were absent or present in a certain amount. This representation constitutes a misbranding of the products that Plaintiff purchased.

55.     Plaintiff believed the false representations about "Net Carbs" that he saw on the product packaging, and he relied on those representations in deciding to purchase Defendant's products. Plaintiff would not have purchased the products if he had known that sugar alcohols impact blood sugar and the Atkins' products instead had carbohydrates which were significantly higher than the amount claimed by Atkins.

56.     Furthermore, ordinary and reasonable consumers would not purchase Atkins' products containing the "Net Carbs" designation if they knew the facts and information that Atkins concealed from consumers.

57.     Plaintiff and members of the Class have been economically damaged by their purchase of Atkins' products, in that they spent money on products that they would not have purchased if they had known the true facts and information that Atkins concealed and misled consumers about, specifically that sugar alcohols do not impact blood sugar. Atkins charges a premium for its products and specifically markets them in a premium location of its retailers; thus, Plaintiff and members of the Class paid more than they normally would have for comparable products. In this respect, Plaintiff and members of the Class have overpaid for Atkins products contained the "Net Carbs" calculation.

## CLASS ACTION ALLEGATIONS

58.     Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following proposed Class:

Consumers who purchased in the State of New York Atkins' products that contained sugar alcohols and were sold in packaging that (1) represented that sugar alcohols do not impact blood sugar and omitted that sugar alcohols impact blood sugar, and/or (2) represented the product contained "Only" a certain number of "Net Carbs."

59.     Excluded from the Class are Defendant, any affiliate, parent, employee or subsidiary of Defendant; any officer, director, or employee of Defendant; anyone employed by counsel for Plaintiff in this action; and any Judge to whom this case is assigned as well as his or her immediate family.

60.     This action has been brought and may be properly maintained as a class action under Federal Rule of Civil Procedure 23.

61.     **Numerosity of the Class – Rule 23(a)(1).**  Class members are so numerous that their individual joinder is impracticable. While the exact number of class members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of class members located throughout New York.

62.     **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), 23(b)(3).** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

a.      Whether Atkins misrepresented / concealed the sugar alcohol content on the label of its products identified with the "Net Carbs" designation;

b.      Whether Atkins misrepresented the impact sugar alcohols have on blood sugar, and/or wrongfully omitted that sugar alcohols impact blood sugar;

c.      Whether Atkins misbranded its products when it stated they have "Only" a certain number of Net Carbs;

d.      Whether Atkins was aware of its deception and/or omissions;

e.      Whether Atkins's deception is material;

f.      Whether Atkins concealed or omitted the true nature of its product;

g.      Whether Atkins profited from its misconduct;

h.      Whether Atkins's conduct harmed Plaintiff and the Class;

i.      Whether Atkins has engaged in unlawful, unfair, or fraudulent business practices in violation of New York law;  and

j.      Whether Plaintiffs and the other Class members are entitled to equitable relief, including declaratory relief, restitution, and/or rescission.

63.     **Typicality – Rule 23(a)(3).**  Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff purchased Atkins products bearing the "Net Carbs" label that contained sugar alcohols, including products that contain the misrepresentations and omissions alleged herein.

64.     **Adequacy of Representation – Rule 23(a)(4).** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Classes.

65.     **Superiority - Rule 23(b)(3).**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also

increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

66.     As an alternative to class certification under Rule 23(b)(3), the proposed Class may be certified under 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making declaratory relief appropriate with respect to the Class.

## COUNT ONE
### Violation of N.Y. Gen. Bus. Law § 349
### (Deceptive and Unfair Trade Practices)

67.     Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

68.     Plaintiff asserts this cause of action on behalf of himself and the proposed Class against Defendant under New York Gen. Bus. Law § 349, which protects consumers against deceptive acts or practices in the conduct of any business.

69.     Atkins' "Net Carb" claims represent that Atkins' products have a very low amount of carbohydrates compared to their competitors, and a very low amount of carbs that impact blood sugar.

70.     Atkins' marketing and packaging schemes equate the term "Net Carb" with "low carb" and such an association is a material fact for consumers who purchase Atkins products.

71.     Throughout the class period, Atkins engaged in deceptive business acts and/or practices by:

        a.     Marketing, advertising, and selling products with the "Net Carbs" label claims that sugar alcohols do not or only "minimally" impact blood sugar, even though sugar alcohols do impact blood sugar; and

b.  Asserting, by its mathematical formula, that sugar alcohols do not impact blood sugar;

c.  Omitting that sugar alcohols do impact blood sugar;

d.  Misbranding its products with the qualifier "Only" before "Net Carbs" on its packaging that improperly suggests that a nutrient is absent or present in a certain amount;

e.  Asserting that Atkins' products have extremely low amount of carbohydrates that "impacted blood sugar" when that is not true; and

f.  Marketing, advertising, and selling products using the "Atkins" name without disclosing and omitting that the products were not consistent with the philosophy of the diet and company's eponymous founder.

72.  Defendant's acts and omissions described herein misled Plaintiff and class members about facts of the product that could not reasonably be known by them.

73.  Defendant's deceptive acts and omissions described herein were made knowingly with the intent to cause Plaintiff and class members to underestimate the carbohydrate impact of Defendant's products.

74.  Defendant's deceptive acts and omissions were directed at consumers.

75.  As a direct result of Atkins's deceptive business acts and/or practices, Plaintiff and members of the Class suffered injury in fact and lost money or property.

76.  Defendant's conduct in employing these deceptive business acts and/or practices was malicious, willful, wanton, and outrageous such as to shock the conscious of the community and therefore warrants imposition of punitive damages in an amount to be determined by a jury.

77.  Defendant's deceptive business acts and practices impact the public interest because Plaintiff and class members were injured in exactly the same way as thousands of others purchasing the products.

78.    Defendant's deceptive business acts and/or practices are likely to mislead reasonable consumers in the future. Had Plaintiff and class members known the true facts about the products, they would not have purchased them at all, much less at their inflated price.

79.    Accordingly, Plaintiff, on behalf of himself and the Class, seeks the greater of $50 per class member or actual damages, whichever is greater, plus attorney's fees.

80.    Plaintiff also seeks an injunction to enjoin the deceptive practices alleged herein.

**COUNT TWO**
**Violation of New York Gen. Bus. Law § 350**
**(False Advertising)**

81.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

82.    Plaintiff asserts this cause of action on behalf of himself and the Class against Defendant under GBL § 350, which declares unlawful "[f]alse advertising in the conduct of any business, trade, or commerce." As defined in the Act, false advertising includes "advertising, including labeling of a commodity … if such advertising is misleading in a material respect" taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity. …" GBL § 350-a(1).

83.    Defendant has been and continues to be engaged in the "conduct of … business, trade, or commerce" under GBL § 350.

84.    Throughout the class period, Defendant caused to be made and disseminated throughout New York statements that were untrue and misleading. These statements were made on the Defendant's product labels, its website, and in general advertising.

85.    Defendant knew, or, in the exercise of reasonable care, should have known that its statements were untrue and misleading to Plaintiff and class members.

86.    Defendant's untrue and misleading statements were material and substantially uniform in their content, presentations, and impact upon Plaintiff and class members.

87.    Defendant's untrue and misleading statements were material and likely to deceive a reasonable consumer. As a direct result of Atkins's false advertising, Plaintiff and members of the Class suffered injury in fact and lost money or property.

88.    Defendant's conduct in employing these deceptive business acts and/or practices was malicious, willful, wanton, and outrageous such as to shock the conscious of the community and therefore warrants imposition of punitive damages in an amount to be determined by a jury.

89.    Accordingly, Plaintiff on behalf of himself and the Class, seek relief against Atkins in the form of an order prohibiting Atkins from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

## COUNT THREE
### Breach of Express Warranty

90.    Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

91.    Plaintiff asserts this cause of action on behalf of himself and the proposed Class against Defendant for breach of express warranty.

92.    Defendant provided Plaintiff and class members with written express warranties that its products contained minimal "net carbs" and that any sugar alcohols contained therein had minimal and effectively no impact on blood sugar.  These "Net Carb" claims are affirmations of fact that were a basis of the bargain between Plaintiff (and class members) and Defendant.

93.    The written affirmations of fact at issue here are the "Net Carb" statements and calculations made on Defendant's products, which include but are not limited to:

a.  "Atkins Net Carb Count assists you in tracking carbs that impact blood sugar. Fiber and sugar alcohols should be subtracted from the total carbs since they minimally impact blood sugar."

b.  Atkins used a Net Carbs mathematical formula that subtracted all sugar alcohols from the total carbohydrate count, thereby asserting that sugar alcohols have no impact on blood sugar;

c.  An "Xg Net Carbs" or "Only Xg Net Carbs" total placed on the front of each box that, combined with the definition on the back, asserts that each product has a certain limited level of "carbs that impact blood sugar;" and

d.  An "Only Xg Net Carbs" representation that improperly suggests a nutrient is absent or present in a certain amount.

94.  Defendant's Net Carb claims created an express warranty that the goods would conform to Defendant's stated promises.

95.  Defendant's Net Carb claims were material to Plaintiff and class members in the decision to purchase Defendant's products.

96.  Defendant breached its express warranty by not providing goods with the qualities promised.

97.  As a direct result of Defendant's breach, Plaintiff and members of the Class suffered injury in fact and lost money or property.

98.  Defendant's conduct in employing these deceptive business acts and/or practices was malicious, willful, wanton, and outrageous such as to shock the conscious of the community and therefore warrants imposition of punitive damages in an amount to be determined by a jury.

99.  Accordingly, Plaintiff on behalf of himself and the Class, seek relief against Atkins in the form of an order prohibiting Atkins from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, requests judgment and relief as follows:

A.      For an order certifying the proposed Class, and appointing Plaintiff and his counsel of record to represent the proposed Class;

B.      For an order declaring that Atkins has violated N.Y. Gen. Bus. Law § 349;

C.      For an order declaring that Atkins has violated N.Y. Gen. Bus. Law § 350;

D.      For an order declaring that Atkins has breached an express warranty;

E.      For an order awarding Plaintiff and Class members damages and statutory damages in an amount to be proven at trial, including punitive damages, together with pre-trial and post-trial interest thereon;

F.      For an order awarding Plaintiff and Class members restitution, disgorgement, or other equitable relief as the Court deems proper;

G.      For an order awarding Plaintiff and the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

H.      For an order awarding such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff, on behalf of himself and all similarly situated persons, demands a trial by jury on all issues that are triable to a jury.

Dated: February 8, 2018                    Respectfully submitted,

                                           **KAPLAN FOX & KILSHEIMER LLP**

                                           _____/s/ David Straite_____
                                           David A. Straite
                                           850 Third Avenue New
                                           York, NY  10022
                                           *dstraite@kaplanfox.com*
                                           Tel.: 212.687.1980
                                           Fax:  212.687.7714
                                           *Local Counsel for Plaintiff*


Matthew L. Dameron                          Jay Barnes
(admitted *pro hac vice*)                   (admitted *pro hac vice*)
**WILLIAMS DIRKS DAMERON LLC**              **BARNES & ASSOCIATES**
1100 Main Street, Suite 2600                219 E. Dunklin Street
Kansas City, Missouri 64105                 Jefferson City, MO 65101
Tel.: 816.945.7110                          Tel.: 573.634.8884
Fax: 816.945.7118                           Fax: 573.635.6291
*matt@williamsdirks.com*                    *Jaybarnes5@zoho.com*
*Lead Counsel for Plaintiff*                *Lead Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th Day of February 2018, the foregoing document was electronically filed on the Court's CM/ECF system, which effectuated service on the following counsel for Defendant:

Gregory T. Wolf
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
gregory.wolf@dentons.com
carly.duvall@dentons.com

Sandra D. Hauser
1221 Avenue of Americas
New York, New York 10020
Sandra.hauser@dentons.com

Michael J. Duvall
601 South Figueroa Street
Suite 2500
Los Angeles, California 90017-5704
michael.duvall@dentons.com

Grant J. Ankrom
One Metropolitan Square
211 N. Broadway, Suite 3000
St. Louis, Missouri 63102-2741
Grant.ankrom@dentons.com

/s/ David Straite
Counsel for Plaintiff and the Proposed Class