**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JOSEPH COLELLA, *individually and on behalf of other similarly situated persons,*<br><br>Plaintiff,<br><br>v.<br><br>ATKINS NUTRITIONALS, INC.,<br><br>Defendant. | No. 17-cv-05867-KAM-SJB |

## DEFENDANT ATKINS NUTRITIONALS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Dentons US LLP
Sandra D. Hauser
1221 Avenue of Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
sandra.hauser@dentons.com

Gregory T. Wolf (admitted *pro hac vice*)
4520 Main Street, Suite 1100
Kansas City, MO  64111
Tel: (816) 460-2400
Fax: (816) 531-7545
gregory.wolf@dentons.com

Michael J. Duvall (admitted *pro hac vice*)
601 South Figueroa Street
Suite 2500
Los Angeles, CA 90017-5704
Tel: (213) 623-9300
Fax: (213) 623-9924
michael.duvall@dentons.com

Grant J. Ankrom (admitted *pro hac vice*)
One Metropolitan Square
211 N Broadway, Suite 3000
St. Louis, MO 63102-2741
Tel: (314) 241-1800
Fax: (314) 259-5959
grant.ankrom@dentons.com


ATTORNEYS FOR DEFENDANT
ATKINS NUTRITIONALS, INC.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................1

PLAINTIFF'S ALLEGATIONS ......................................................................................3

ARGUMENT ....................................................................................................................6

I.     PLAINTIFF'S STATE LAW CLAIMS RELATING TO ATKINS'
QUANTITATIVE NET CARBS CLAIMS AND ITS CALCULATION
METHOD ARE EXPRESSLY PREEMPTED BY FEDERAL LAW. ...........................6

     A.    The FDCA and Its Implementing Regulations ......................................7

          1.    21 U.S.C. 343(q): Disclosure of Nutrition Information............................8

          2.    21 U.S.C. 343(r): Nutrient Content Claims ................................................8

          3.    21 U.S.C. 343-1(a)(5): Express Preemption Relating to Nutrient
Content Claims..................................................................................................9

     B.    Atkins' "Net Carbs" Statements Are Nutrient Content Claims. ..............................9

     C.    Plaintiff's State Law Claims Relating to Atkins Quantitative Net Carbs
Claims and Its Calculation Method Are Preempted Because "Net Carbs"
Nutrient Content Claims Are Permitted Under Federal Law................................11

II.    ALTERNATIVELY, THE COURT SHOULD DISMISS ALL OF PLAINTIFF'S
CLAIMS PURSUANT TO THE DOCTRINE OF PRIMARY JURISDICTION............19

III.   PLAINTIFF'S CLAIMS ALSO SHOULD BE DISMISSED FOR FAILURE TO
SATISFY THE BASIC PLEADING REQUIREMENTS OF RULE 8. ..........................23

IV.   PLAINTIFF FAILS TO ADEQUATELY ALLEGE INJURY FOR HIS GBL
CLAIMS. ........................................................................................................................24

V.    PLAINTIFF'S BREACH OF WARRANTY CLAIMS ALSO SHOULD BE
DISMISSED BECAUSE HE DID NOT GIVE ATKINS NOTICE OF THE
ALLEGED BREACH.....................................................................................................26

VI.   PLAINTIFF CANNOT SEEK INJUNCTIVE RELIEF. ................................................27

CONCLUSION................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Blue Diamond Growers*,
    151 F. Supp. 3d 412 (S.D.N.Y. 2015)......................................................................28

*Am. Home Prods. Corp. v. Johnson & Johnson*,
    672 F. Supp. 135 (S.D.N.Y. 1987) .......................................................................19

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
    823 F.3d 51 (2d Cir. 2016)...................................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................23, 25

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................23

*Bimont v. Unilever U.S., Inc.*,
    2015 WL 5256988 (S.D.N.Y. Sept. 9, 2015).......................................................17

*Board-Tech Elec. Co. v. Eaton Electric Holdings, LLC*,
    2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017).......................................................24

*Bowling v. Johnson & Johnson*,
    65 F. Supp. 3d 371 (S.D.N.Y. 2014)...........................................................12, 14, 15

*Buonasera v. Honest Co.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016)..................................................................27

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
    475 F. App'x 113 (9th Cir. 2012) .........................................................................17

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) .................................................................8

*Chang v. Fage USA Dairy Indus., Inc.*,
    2016 WL 5415678 (E.D.N.Y. Sept. 28, 2016) ....................................................27

*Darbari v. Lenox Hill Hosp,. Inc.*,
    2011 WL 1226269 (S.D.N.Y. Mar. 24, 2011) .....................................................19

*Ellis v. Tribune Television Co.*,
    443 F.3d 71 (2d Cir. 2006)...............................................................................19, 20

*Fernandez v. Atkins Nutritionals, Inc.*,
  2018 WL 280028 (S.D. Cal. Jan. 3, 2018)......................................................................*passim*

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*,
  2013 WL 1558697 (D.N.J. Apr. 11, 2013) ...............................................................................19

*Friendship Med. Ctr., Ltd. v. Space Rentals*,
  62 F.R.D. 106 (N.D. Ill. 1974)................................................................................................23

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88 (1992)....................................................................................................................6

*Gorenstein v. Ocean Spray Cranberries, Inc.*,
  2010 WL 10838229 (C.D. Cal. Jan. 29, 2010) .......................................................................18

*Haggag v. Welch Foods, Inc.*,
  2014 WL 1246299 (C.D. Cal. Mar. 24, 2014) ..................................................................20, 22

*Hood v. Wholesoy & Co.*,
  2013 WL 3553979 (N.D. Cal. July 12, 2013) .........................................................................18

*Izquierdo v. Mondelez Int'l, Inc.*,
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ....................................................................25, 26

*Johnson v. Atkins Nutritionals, Inc.*,
  2017 WL 6420199 (W.D. Mo. Mar. 29, 2017).......................................................................*passim*

*In re KIND LLC "Healthy and All Natural" Litig.*,
  209 F. Supp. 3d 689 (S.D.N.Y. 2016).................................................................................20, 23

*Mrla v. Fed. Nat'l Mortg. Ass'n*,
  2016 WL 3924112 (E.D. Mich. July 21, 2016) ......................................................................23

*Oscar v. BMW of N. Am., LLC*,
  2012 WL 2359964 (S.D.N.Y. June 19, 2012) ........................................................................24

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ...............................................................................................................24

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
  588 F. Supp. 2d 527 (S.D.N.Y. 2008)...........................................................................7, 9, 14

*POM Wonderful LLC v. Coca-Cola Co.*,
  134 S. Ct. 2228 (2014)........................................................................................................7, 23

*Pungitore v. Barbera*,
  506 F. App'x 40 (2d Cir. 2012) ...............................................................................................27

iii

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013)..................................................................26, 27

*Servedio v. State Farm Ins. Co.*,
    889 F. Supp. 2d 450 (E.D.N.Y. 2012), *aff'd*, 531 F. App'x 110 (2d Cir. 2013).....................25

*Simon v. Smith & Nephew, Inc.*,
    990 F. Supp. 2d 395 (S.D.N.Y. 2013)......................................................................10

*Singleton v. Fifth Generation, Inc.*,
    2016 WL 406295 (N.D.N.Y Jan. 12, 2016).................................................................26

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999).............................................................................................25

*Turek v. General Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011) ..............................................................................18, 22

*United States v. W. Pac. R.R. Co.*,
    352 U.S. 59 (1956)..............................................................................................19

*Wachovia Bank, N.A. v. Burke*,
    414 F.3d 305 (2d Cir. 2005).....................................................................................6

**Statutes**

21 U.S.C.
    § 301....................................................................................................................7
    § 343-1 ....................................................................................................... *passim*
    § 343........................................................................................................... *passim*

New York General Business Law
    § 349.............................................................................................................6, 18, 19
    § 350.................................................................................................................6, 19

**Other Authorities**

21 C.F.R.
    § 100.1..................................................................................................................9
    § 101.9..................................................................................................................8
    § 101.13.............................................................................................................8, 9

Federal Rules of Civil Procedure
    § 8............................................................................................................23, 24, 26

U.S. Constitution Article VI § 2 ..........................................................................................6

## **INTRODUCTION**

Plaintiff's Amended Complaint challenges Atkins Nutritionals Inc.'s ("Atkins") "net carbs" statements that appear on Atkins' product labels, among other places.  These include quantitative statements about "net carbs" and Atkins' explanation of how and why it calculates "net carbs."

The Amended Complaint comes no closer than its predecessor to stating a valid claim. Fundamentally, Atkins clearly discloses on the Nutrition Facts panel of its products the total carbohydrates, dietary fibers, and sugar alcohols, and their weights, in full compliance with the Federal Food, Drug, and Cosmetic Act (the "FDCA") and the Food and Drug Administration's (the "FDA") implementing regulations.  Using those disclosures, and consistent with FDA regulations, Atkins, with full transparency, calculates "net carbs" by subtracting dietary fibers and sugar alcohols from total carbohydrates.  In addition, and also consistent with FDA guidance, Atkins includes an explanation of its calculation method on each of its product labels. According to Plaintiff, however, Atkins' labels are still misleading because, in his view, sugar alcohols, particularly maltitol, should not be subtracted in the calculation of net carbs.

Federal law prohibits Plaintiff from challenging both Atkins' quantitative "net carbs" statements and its calculation method in this putative class action.  A plaintiff simply cannot, through state law effected through a civil suit like this one, ask the Court to impose labeling requirements that are different from the federal statutes and regulations that govern food labeling.  Importantly, there is no federal law that mandates a specific net carbs calculation or that prohibits Atkins from using its "net carbs" calculation which entirely conforms with federal law.

1

Indeed, in *Johnson v. Atkins Nutritionals, Inc.*, 2017 WL 6420199 (W.D. Mo. Mar. 29, 2017), and *Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018)—two cases brought by the same counsel representing Plaintiff here—the Western District of Missouri and the Southern District of California evaluated nearly identical challenges to Atkins' product labels.  The court in *Johnson* dismissed the plaintiff's claims purporting to challenge Atkins' quantitative statements about the total "net carbs" contained in its products, such as the "Xg Net Carbs" statement challenged here, as preempted by federal law.  *Johnson*, 2017 WL 6420199, at *7, *9.  Similarly, in *Fernandez*, the court dismissed the plaintiff's claims purporting to challenge Atkins' quantitative statements about the total "net carbs" as preempted, except "to the extent that they are based on Atkins' [purported] failure to indicate on its labels how it calculates net carbs."[1]  *Fernandez*, 2018 WL 280028, at *9.

The same rationale should apply here, and result in the dismissal of Plaintiff's core claim in this case that Atkins' quantitative "net carbs" statements are misleading and violative of state law.  The Court should also dismiss Plaintiff's claim that Atkins' statements disclosing its formula for calculating "net carbs," and describing its rationale for using such a formula, because this too is preempted by Federal law—in fact the FDA has actually *instructed* that "net carbs" should be disclosed in this manner.  Plaintiff cannot use this case to create different standards from, or circumvent, a carefully crafted regulatory scheme, yet that is exactly what he asks this Court to do.

Even if any of Plaintiff's state law claims can escape dismissal on preemption grounds, all of his claims should nevertheless be dismissed with prejudice under the doctrine of primary

---

[1] Again, Atkins' labels indicate exactly how net carbs are calculated.  Plaintiff here does not challenge lack of disclosure, but rather disagrees with and challenges Atkins' calculation method.

jurisdiction.  As Plaintiff's Amended Complaint underscores through its references to the FDA's

regulation of food labeling and "net carbs" statements in particular, the FDA is in the best

position to evaluate Atkins' "net carbs" labeling—and indeed has done so, repeatedly, over the

past decade and a half.  This dispute thus should not be resolved by this Court but rather by the

FDA.

      In addition, dismissal is required because Plaintiff fails to sufficiently plead *any* claim by

not alleging necessary details regarding the products he purchased, such as when he allegedly

purchased them, how much he supposedly paid, and what specific quantitative claims were made

on those products' labels, and by making contradictory allegations regarding Atkins' products in

general.  Plaintiff's claims under New York's General Business Law also fail because he fails to

adequately allege injury under that statute, and his breach of warranty claim fails because he

does not allege that he gave the requisite timely notice to Atkins.  Finally, Plaintiff cannot seek

injunctive relief because he has not alleged, and cannot allege, a likelihood of future harm.

## PLAINTIFF'S ALLEGATIONS[2]

      Atkins is a company that was formed by the late Dr. Robert Atkins and sells food

products related to the Atkins low-carbohydrate dietary plan.  (Doc. 26 ¶ 12.)  Plaintiff alleges

that Atkins misleads consumers about the carbohydrate content in its food products because

Atkins' food products, including the products Plaintiff alleges he purchased, claim to have "low

'Net Carbs' even though the products contain sugar alcohols. " (*Id.* ¶ 1.)  Plaintiff further alleges

---

[2]  Atkins recites Plaintiff's allegations for purposes of evaluating the Amended Complaint but
does not admit their truth.  For instance, much of Plaintiff's Amended Complaint is premised on
fundamental misunderstandings and mischaracterizations of Dr. Robert Atkins' writings and the
timing of his scientific research vis-à-vis the development of Atkins products.  If this case
proceeds to the merits stage, Atkins will disprove these and other assertions made in the
Amended Complaint.

that these "net carbs" claims are "wrong" because Atkins subtracts sugar alcohol from its "net carbs" calculation on the basis that sugar alcohols "minimally impact blood sugar" when, according to Plaintiff, sugar alcohols actually "have a significant impact on blood sugar levels." (*Id.* ¶ 3, 30.)

Plaintiff acknowledges that Atkins' labels provide the amount of total carbohydrates, dietary fiber, and sugar alcohols contained in Atkins' products, and that Atkins is transparent with consumers about its method of calculating net carbs by taking the total carbohydrate content of a product and subtracting dietary fiber and sugar alcohols. (*Id.* ¶¶ 16, 22, 25.) Nonetheless, Plaintiff claims that Atkins' net carbs statements "deceive[d] consumers into purchasing [Atkins] products" by advising that "sugar alcohols have a 'minimal' impact on blood sugar." (*Id.* ¶ 11.)

Paragraph 20 of the Amended Complaint includes a list of 31 Atkins' products that contain the sugar alcohol maltitol and which Plaintiff alleges are misleadingly branded. (*Id.* ¶¶ 20, 26, 50.) Plaintiff later alleges that he purchased only three of these products—Atkins' Chocolate Chip Cookie Dough Bar, Atkins' Sweet & Salty Trail Mix, and Atkins' Chocolate Peanut Candies (collectively, the "Purchased Products")—at a Wal-Mart store in Nassau County, New York "within the past two years." (*Id.* ¶ 52.) He does not allege when exactly he bought the Purchased Products, nor does he allege how much he paid for the Purchased Products. Plaintiff also does not provide a specific description of the labels of the Purchased Products or the specific quantitative net carbs claims made on their labels, let alone a picture of the labels.

Plaintiff does, however, provide pictures of a different Atkins' product—Atkins' Chocolate Candies—even though he does not allege he purchased that product. (*Id.* ¶¶ 20-22, 25.) According to Plaintiff, Atkins' Chocolate Candies product "claims to have just '1g Net Carb" based on the Nutrition Facts panel listing of 19 grams total carbohydrates, 4 grams of

4

dietary fiber, and 14 grams of sugar alcohols (*i.e.*, 19 - 4 - 14 = 1).  (*Id.* ¶¶ 21-25.)  Plaintiff

further alleges that the Chocolate Candies' label includes the following text box:



(*Id.* ¶ 25.)

Plaintiff attempts to link these representations on the Chocolate Candies to all of the

Atkins' products listed in the Amended Complaint, including the three Purchased Products, by

alleging that "[a]n identical or *substantially similar claim* appears on every Atkins' product

identified in paragraph 20." (*Id.*¶ 26 (emphasis added).)   Plaintiff further alleges that Atkins

"uses the phrase 'Only Xg Net Carbs' in its labeling on products identified in the paragraph 20"

of the Amended Complaint, including the Purchased Products. (*Id.* ¶¶ 50, 54.)  Notably,

however, the only pictures of a product label actually included in the Amended Complaint are

the pictures of the label of the Chocolate Candies, and none of those pictures includes an "Only

Xg Net Carbs" claim.

Plaintiff claims that he "would not have purchased the [P]roducts if he had known that

sugar alcohols impact blood sugar and the Atkins' products instead had carbohydrates which

were significantly higher than the amount claimed by Atkins." (*Id.* ¶ 55.)  Plaintiff also claims

that he and members of his proposed class "spent money on products that they would not have

purchased if they had known the true facts and information that Atkins concealed and misled

consumers about, specifically that sugar alcohols do not impact blood sugar." (*Id.* ¶ 57.)  In

addition to claiming that he and his proposed class were harmed by purchasing products they would not have otherwise purchased, Plaintiff also includes conclusory allegations that "Atkins charges a premium for its products," based, in part, on the allegation that Atkins' products are marketed "in a premium location of its retailers." (*Id.*)

> Plaintiff filed this lawsuit on behalf of himself and a putative class of
>
> Consumers who purchased in the State of New York Atkins' products that contained sugar alcohols and were sold in packaging that (1) represented that sugar alcohols do not impact blood sugar and omitted that sugar alcohols impact blood sugar, and/or (2) represented the product contained "Only" a certain number of "Net Carbs."

(*Id.* ¶ 58.) Plaintiff's Amended Complaint asserts three causes of action: (1) violation of the New York General Business Law ("GBL") § 349; (2) violation of GBL § 350; and (3) breach of express warranty. (*Id.* ¶¶ 67-99.)

## ARGUMENT

## I.   PLAINTIFF'S STATE LAW CLAIMS RELATING TO ATKINS' QUANTITATIVE NET CARBS CLAIMS AND ITS CALCULATION METHOD ARE EXPRESSLY PREEMPTED BY FEDERAL LAW.

Preemption—the well-established doctrine that provides that a plaintiff cannot bring a claim under state law that is inconsistent with, or would set different standards from, federal law—is derived from the Supremacy Clause, which provides that federal law "shall be the supreme Law of the Land." U.S. Const. art. VI § 2.

"[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (citations omitted). Pursuant to the Supremacy Clause, federal law preempts state law, including state consumer fraud claims such as Plaintiff's, "where Congress has expressly preempted state law, where Congress has legislated so comprehensively that federal

law occupies an entire field of regulation and leaves no room for state law, or where federal law conflicts with state law." *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005). Express preemption applies when "Congress's intent to preempt state law is 'explicitly stated in [a] statute's language.'" *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 530 (S.D.N.Y. 2008) (citation omitted).

Here, Plaintiff's state law claims concerning Atkins' quantitative net carbs claims and its explanation of its calculation method are expressly preempted by the FDCA, 21 U.S.C. § 301 *et seq.*, and should be dismissed on this basis. Specifically, and as explained below, Plaintiff's claims are preempted because (1) the FDCA and its implementing regulations preclude a state from prohibiting labeling regarding a product's "nutrient content" that is permitted by the FDA; (2) Atkins' quantitative net carbs claims are express "nutrient content" claims under the FDCA that have been permitted by the FDA for over a decade; and (3) Plaintiff's claims nonetheless seek to prohibit Atkins' net carbs claims.

### A.    The FDCA and Its Implementing Regulations

The FDCA, through section 343-1(a)(5), is fatal to Plaintiff's claims because it provides for broad and express preemption of non-identical state law requirements relating to nutrient content claims, as described in Section 343(r), that are displayed on food products.

As background, the FDCA establishes a comprehensive federal regulatory scheme for food labeling. *See, e.g., POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2234 (2014). In 1990, the FDCA was amended by the Nutrition Labeling and Education Act ("NLEA"), which requires labeling on packaged foods, regulates the making of claims about food, and provides that state law requirements regarding nutrient content claims are expressly preempted. *See* 21 U.S.C. §§ 343(q), 343(r), 343-1(a)(5). The purpose of the NLEA was to "clarify and . . .

strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods."  H.R. Rep. No. 101- 538 at 7 (1990).

The NLEA added three provisions to the FDCA that are relevant to Plaintiff's claims: Sections 343(q), 343(r), and 343-1(a)(5).  These provisions are interrelated and are discussed in turn below.

### 1.      21 U.S.C. 343(q):  Disclosure of Nutrition Information

Section 343(q) requires that food labels intended for human consumption and offered for sale (like the Atkins products at issue in Plaintiff's Complaint) bear certain nutrition information on their labels.  Importantly, Section 343(q)(1) and its implementing regulations require the disclosure of the total carbohydrates per serving of a food product.  21 U.S.C. § 343(q)(1)(D); 21 C.F.R. § 101.9(c)(6).  Dietary fibers and sugar alcohols (such as maltitol) are specifically considered carbohydrates for the purpose of calculating "total carbohydrates."  21 C.F.R. § 101.9(c)(6)(i)-(iv).  Moreover, sugar alcohols and their weights may be voluntarily disclosed on a label as a separate item in the Nutrition Facts panel, in addition to total carbohydrates and dietary fibers.  21 C.F.R. § 101.9(c)(6).

### 2.      21 U.S.C. 343(r):  Nutrient Content Claims

Section 343(r) governs any statement "made in the label or labeling of food which expressly or by implication characterizes the level of any nutrient which is of the type required by" Section 343(q)(1)-(2).  Section 343(r) "governs all *voluntary* statements about nutrient content . . . a manufacturer chooses to include on a food label or packaging."  *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1117 (N.D. Cal. 2010) (emphasis in original).  These statements are referred to as "nutrient content claim[s]," and can be expressed or implied.  21

C.F.R. § 101.13.  An express nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food," such as "contains 100 calories."  *Id.*  By contrast, an implied nutrient content claim "describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount, (e.g. 'high in oat bran.')"  *Id*.  Express nutrient content claims are permitted under the FDCA if they "do[] not in any way implicitly characterize the level of the nutrient in the food and [are] not false or misleading in any respect (*e.g.*, '100 calories' or '5 grams of fat')."  *Id.* § 101.13(i)(3).

### 3.   21 U.S.C. 343-1(a)(5):  Express Preemption Relating to Nutrient Content Claims

Section 343-1(a)(5) prohibits states from establishing, directly or indirectly under any authority, "any requirement respecting any [nutrient content claim], made in the label or labeling of food that is *not identical* to the requirement of section 343(r)."  21 U.S.C. § 343-1(a)(5) (emphasis added).  This bar against non-identical state law "requirement[s]" "reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties."  *In re PepsiCo*, 588 F. Supp. 2d at 532 (quoting *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 443 (2005)).  A requirement is "not identical" to those required under Section 343(r) if, among other ways, "the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food" that "[a]re not imposed by or contained in the applicable provision (including any implementing regulation)."  21 C.F.R. § 100.1(c)(4).

### B.   Atkins' "Net Carbs" Statements Are Nutrient Content Claims.

Atkins quantitative "net carbs" statements are indisputably nutrient content claims, and thus any state law requirements that differ from the FDA's requirements for "net carbs" statements, such as the requirements Plaintiff wishes to impose here, are subject to preemption. Atkins' "net carbs" statements derive from its "net carbs" calculation, which subtracts "dietary

fibers" and "sugar alcohols" (*i.e.*, two types of FDA-defined carbohydrate nutrients) from the "total carbohydrates" count listed in the Nutrition Facts panel required by Section 343(q)(1)(D). (Doc. 26 ¶ 18, 21-25.) As such, Atkins' "net carb" statements relate to "the level of" nutrients which are "of the type required by" Section 343(q)(1), namely FDA-defined carbohydrates. Thus, Atkins' "net carbs" statements are nutrient content claims. In fact, the FDA has implicitly confirmed this. *See*, *e.g.*, Ankrom Dec. Ex. A (FDA Warning Letter to Today's Temptations, Inc., at p.2 (March 25, 2010)) (warning a company that a label containing the statement "Only 2g Digestible Carbs" was an "unauthorized nutrient content claim").[3]

Further, Atkins' quantitative "net carbs" statements, such as the "1g Net Carbs" statement that appeared on the Chocolate Candies box incorporated into Plaintiff's Complaint (that Plaintiff does not allege he even purchased), are "express" nutrient content claims. (*See* Doc. 26 ¶ 21.) Such statements are "direct statement[s] about the level" of net carbohydrates in the product and merely quantify the number of net carbohydrates without additional description, such as "high" or "low."

That Atkins' quantitative "net carbs" statements are express nutrient content claims was confirmed in both *Johnson* and *Fernandez*. In *Johnson*, the court specifically considered whether Atkins' "Xg Net Carbs" statement was a nutrient content claim, and whether it was express or implied. *Johnson*, 2017 WL 6420199, at *6-*7. The plaintiff contended that Atkins' "net carbs" statements were not nutrient content claims because "net carbohydrates" were not

---

[3] District courts often take judicial notice of public records, including reports and records of the FDA, and consider them on a motion to dismiss. *See e.g.*, *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016) (taking judicial notice of FDA guidance document on motion to dismiss "because the Guidance is publicly available and its accuracy cannot reasonably be questioned" (citations omitted)); *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 401 n.2 (S.D.N.Y. 2013) ("For the purpose of resolving the present motion [to dismiss], the Court takes judicial notice of public records contained on the FDA website.").

"nutrients" required to be disclosed in the Nutrition Facts label under Section 343(q).  *Id.* at *6. The court rejected this contention, noting that the FDA's definition of "nutrient" is not limited by the Nutrition Facts label, but also "encompasses 'nutritional substances.'"  *Id.* (citing 62 Fed. Reg. at 49859-60).  From there, the court noted that "net carbohydrates are those carbohydrates remaining after one subtracts dietary fibers and sugar alcohols from the total carbohydrate count" and reasoned that "[t]here can be little doubt that what remains, a subset of carbohydrates, is a nutritional substance."  *Id.*  Thus, the court found that the term "nutrient," under the FDA's definition, clearly encompasses net carbohydrates.  *Id.*  The court also concluded that an "Xg Net Carbs" statement is an "'express' nutrient content claim" because it "merely makes a quantitative statement" and "does not seek to characterize the level of net carbohydrates."  *Id.*

Similarly, in *Fernandez*, the court also specifically addressed whether Atkins' quantitative "__g Net Carbs" claims were nutrient content claims. 2018 WL 280028, at *5-*7. There, the court held that "Section 343(r)(1) governs claims regarding "any nutrient which is *of the type* required by paragraph (q)(1) and (q)(2)," and "[t]he phrase 'of the type' broadens the scope of § 343(r)'s purview beyond those specifically enumerated in § 343(q) and related regulations." *Id.* at *6.  Thus, the court in *Fernandez* also concluded that Atkins' "__g Net Carbs" claims were nutrient content claims.

### C.   Plaintiff's State Law Claims Relating to Atkins Quantitative Net Carbs Claims and Its Calculation Method Are Preempted Because "Net Carbs" <u>Nutrient Content Claims Are Permitted Under Federal Law.</u>

Shortly after the NLEA was passed, the FDA issued regulatory guidance explaining that "a State may not establish or continue in effect any requirement 'of the type' set forth in the sections of the act specified in section [343-1(a)(2)] through (a)(5) . . . even if no analogous Federal regulation had been promulgated."  Ankrom Dec. Ex. B (State Pet. Req. Exemption from

11

Fed. Preemption, 58 Fed. Reg. 2462-01, at 2463 (Jan. 6, 1993)).  This underscores that a state

law cause of action is preempted both "when a state law prohibits labeling that is permitted under

federal law" as well as when it "prohibits labeling that is *not* prohibited under federal law."

*Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) (emphasis added)

(dismissing state law claims as preempted because the plaintiff failed to "plead facts suggesting

that the FDA affirmatively prohibited" the challenged statement).

Atkins' "net carbs" statements are both "not prohibited" under the FDCA and the NLEA

and, indeed, have been directly considered and permitted by the FDA following review.  For

example, in 2004, the FDA received petitions asserting that food manufacturers like Atkins

should be able to state the "net" amount of carbohydrates after fiber and sugar alcohols are

subtracted from the total carbohydrate figure.[4]  In response to such petitions, the FDA expressly

stated that it would evaluate whether to enact more specific regulations concerning

carbohydrates, including "net carbohydrate" statements.  *See*, *e.g.*, Ankrom Dec. Ex. D (FDA

Fact Sheet on Carbohydrates, Mar. 12, 2004).  The FDA also announced that it "intend[ed] to

initiate rulemaking proceedings for nutrient content claims for carbohydrates . . . [and to] provide

guidance to food manufacturers on the use of the term 'net' in relation to the carbohydrate

content of food."  *Id*.

Later, in 2004, the FDA advised the industry and consumers:  "With respect to 'net

carbohydrate' labeling, although FDA has not issued guidance regarding the use of such

statements, the agency has not generally objected to the use of 'net carbohydrate' type

information on food labels if the label adequately explains how the terms are used so that it

---

[4]  *See*, *e.g.*, Ankrom Dec. Ex. C ("Nutrient Content Claims," submitted by Unilever United
States, Inc., April 16, 2004, at 1-2).

would not be false or misleading to consumers." Ankrom Dec. Ex. E (Ltr. From L. Crawford, Acting FDA Commissioner to NCL, Nov. 19, 2004).   In 2014, the FDA again specifically evaluated and responded to comments involving the calculation of "net carbs," and again declined to mandate (or prohibit) a specific calculation of the term. *See* Ankrom Dec. Ex. F (FDA Proposed Rule re Food Labeling, submitted for comment Mar. 3, 2014, at 11900); Ankrom Dec. Ex. G ("Food Labeling: Revision of the Nutrition and Supplement Facts Labels," Final Rule at 33794-95, cmt. 121).

Further, in response to an Atkins' competitor's complaint *specifically about Atkins' net carbs labeling*, the FDA acknowledged that "that there are various types of quantitative 'net' [carbohydrate] claims in the marketplace" and advised that it was "not generally objecting to additional quantitative 'net' carbohydrate-type statements that are truthful and not misleading; for example where the 'net' terms are sufficiently explained on the label so that the consumer understands the meaning of the use of such terms." Ankrom Dec. Ex. H (Ltr. From M. Landa, Deputy Director for Regulatory Affairs, FDA Center for Food Safety and Applied Nutrition, Sept. 15, 2005 at 1).  Clearly, the FDA determined that Atkins' disclosure of its formula for calculating net carbs, and its explanation for employing such formula, is truthful and not misleading, given that Atkins "net carbs" calculation *was the subject of the FDA correspondence*.  This stands in stark contrast to the specific enforcement actions (*e.g.*, warning letters) that the FDA has taken against other companies relative to certain "net carbs" statements. *See, e.g.*, Ankrom Dec. Ex. I (Ltr. To Bob's Red Mill Natural Foods, July 31, 2012 at 1); *see also* Ex. J (Ltr. To Julian Bakery, Inc., July 23, 2014 at 2).

Thus, while there is no specific federal regulation that defines (or proscribes) a specific method of calculation for "net carbs," the FDA has long been aware (for more than a decade) of

13

Atkins' "net carbs" statement, has made no objection to it, and has determined that a specific

mandate or prohibition of the calculation is not advisable.  Moreover, although the FDA has

taken action concerning certain other entities' use of various "net carbs" representations where

necessary, the agency has shown it has no issue with Atkins.

In this regard, Plaintiff's claims are akin to the misbranding allegations that the Court

held preempted in *In re PepsiCo*.  There, the plaintiff alleged that Pepsi had misbranded bottled

water by falsely suggesting that the water came from natural springs, rather than from the tap.

The court noted that the FDA had issued guidance regarding the disclosure of the source of

bottled water, specifically that purified water need not denote its source (*i.e.*, spring, tap, etc.).  *In*

*re PepsiCo Inc.*, 588 F. Supp. 2d at 537.  The court held that the plaintiff's claims were

preempted because they would have imposed a non-identical requirement that was within a

subject matter the FDA had addressed:  "Where federal requirements address the subject matter

that is being challenged through state law claims, such state law claims are preempted to the

extent they do not impose identical requirements."  *Id.* at 538.

In addition, the  FDA's decision to not enact a specific regulation explicitly approving (or

disapproving) Atkins' quantitative "net carbs" statements here was not an implicit invitation for

private state-law litigants to "fill a gap."  Rather, it was "'tantamount to a conscious decision by

the agency to permit'" the action.  *Bimont v. Unilever U.S.*, *Inc.*, 2015 WL 5256988, at *6

(S.D.N.Y. Sept. 9, 2015) (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th

Cir. 2015)).

In this regard, Plaintiff's allegations are very much like those preempted in *Bowling*.

There, the plaintiffs challenged statements that certain dental hygiene products helped "restore[]

enamel." 65 F. Supp. 3d at 373.  According to the plaintiffs, "an overwhelming consensus of

14

medical and dental experts" had concluded that loss of tooth enamel was permanent.  *Id.*  In assessing the plaintiffs' claims, the court noted that the FDA had issued a monograph permitting manufactures to market products containing sodium fluoride, such as the products at issue, as "aid[ing] the prevention" of dental decay and to include "other truthful and nonmisleading statements."  *Id.*  The court further noted that the FDA had issued warning letters to various companies objecting to certain fluoride-related labeling practices, but had "expressed no concern about the label 'Restores Enamel.'" *Id.* at 374.  Given these facts, the court concluded that the plaintiffs' claims were preempted because they had failed to demonstrate that the FDA "ha[d] affirmatively prohibited the [challenged] label" and, thus, the plaintiffs were "in effect" attempting to "impos[e] a labeling requirement that [was] 'not identical with' labeling requirements under federal law." *Id.* at 376 (emphasis in original).

As discussed above, the FDA obviously has considered and addressed the "subject matter" of net carbs.  That coupled with the absence of any requirement in the FDCA/NLEA or the implementing regulations that Atkins calculate net carbs in a particular manner, let alone that desired by Plaintiff, means that Plaintiff's allegations challenging Atkins quantitative "net carbs" statements run afoul of Section 343-1(a)(5)'s preemption provision.  *See*, *e.g.*, *Bowling*, 65 F. Supp. 3d at 376 (preemption was triggered when the FDA had issued some regulations regarding the type of labeling at issue but had not specifically prohibited the defendant's label).  This is precisely why the court in *Johnson* held, with respect to Atkins "Xg Net Carbs" statements:

> In light of the FDA's permissive view towards net carbohydrate nutrient content claims, the Court finds no violation of Section 343(r)(1)(A) that would render ineffective Section 343-1(a)(5). That being the case, Plaintiff cannot seek damages on the basis that these labels are false or misleading.  *To do so would punish Defendant for using the label in a manner that is consistent with Section 343(r).*

15

> Furthermore, *Plaintiff seeks to impose requirements in addition to those imposed by Section 343(r)(1)(A) and the applicable federal regulations.* Plaintiff's complaint would require Defendant to utilize a specific method of calculating net carbohydrates before making a net carbohydrate nutrient content claim. The FDA permits net carbohydrate nutrient content claims so long as the statement is quantitatively true and the method of calculation is disclosed. Plaintiff cannot, through a state law cause of action, prescribe a particular calculation that Defendant must use before making a net carbohydrate nutrient content claim. *Therefore, federal law preempts any attempt by Plaintiff to impose a particular method of calculating net carbohydrates.*

*Johnson*, 2017 WL 6420199, at *6-*7 (emphasis added); *see also Fernandez*, 2018 WL 280028, at *9 (holding—"just as the court in Johnson did—that federal law does preempt California law to the extent that Fernandez seeks to require Atkins to 'utilize a specific method of calculating net carbohydrates before making a net carbohydrate nutrient content claim.'") (quoting *Johnson* 2017 WL 6420199, at *7).[5]

This same result should follow here, as Plaintiff's claims are based on Atkins' calculation of "net carbs" and resulting quantitative statements, such as "1g Net Carb." (*See, e.g.*, Doc. 26 ¶¶ 21-25.)

Moreover, Plaintiff's challenge to Atkins' disclosure of its formula used for calculating "net carbs," and the accompanying explanation of that formula, which he claims are misleading, also are preempted by federal law. Atkins' disclosures and explanations of its calculation method are necessary to comply with the FDA's instructions concerning nutrient content claims

---

[5] In *Fernandez*, there were no allegations that that the labels included an explanation of Atkins' method of calculation for net carbs claims, and the court thus inferred that Atkins does not include its net carbs calculation method on its labels, which resulted in the court finding that the plaintiff's claims were not preempted, but only to the extent they were based on "Atkins's failure to indicate on its labels how it calculates net carbs." Nevertheless, the court in *Fernandez* held that "any state law requirement that prescribes a particular method of calculating net carbs" was preempted. Here, in contrast, Plaintiff expressly avers that every product contains an explanation as to how net carbs are calculated. (Doc. 26 ¶¶ 25-26.)

relating to "net" carbohydrates.  *See* Ankrom Dec. Ex. E at 1 (Ltr. From L. Crawford, Acting

FDA Commissioner to NCL, Nov. 19, 2004) (stating that packaging using "net carb" statements

must "adequately explain[] how the terms are used so that it would not be false or misleading to

consumers").[6]

That the FDA: (a) has issued specific regulations on the general subject matter of

carbohydrates and sugar alcohols; (b) has been fully aware of Atkins' "net carbs" counting

method, including that it is based on the premise that sugar alcohols minimally impact blood

sugar; (c) has taken enforcement actions concerning certain "net carbohydrate" statements made

by other companies; (d) has taken the position that Atkins' net carb statements are truthful and

not misleading; and (e) has neither taken any enforcement action against Atkins for its 'net

carbs" statements nor promulgated additional requirements concerning them (despite having

multiple opportunities to do so), all demonstrate that Plaintiff is attempting to proscribe or

penalize language that is not prohibited, and, in fact, permitted and necessary, under the federal

regulatory framework.  The FDCA's preemption provisions prevent Plaintiff from doing so and

mandate dismissal of this case.  *See, e.g., Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F.

App'x 113, 115 (9th Cir. 2012) (holding that plaintiffs' attempt "to enjoin and declare unlawful

the very statement that federal law permits" was preempted because "[s]uch relief would impose

a burden through state law that is not identical to [federal] requirements").

---

[6] In *Johnson*, the court held that the plaintiff's claims based on quantitative "net carbs" statements were preempted, but permitted the plaintiff to move forward to the extent his claims were based on Atkins's explanation of its "net carbs" calculation.  As detailed further herein, however, the FDA not only requires food companies to disclose how any "net carbohydrate" term is used, but also has considered Atkins' explanatory statements in this regard, and has not objected to them.

Finally, Plaintiff's claims must be preempted because the purpose of the FDCA and NLEA is to create a national, uniform scheme for food labeling. *See, e.g.*, *Hood v. Wholesoy & Co.*, 2013 WL 3553979, at *5 (N.D. Cal. July 12, 2013). The preemption doctrine serves the same purposes. *See, e.g.*, *Gorenstein v. Ocean Spray Cranberries, Inc.*, 2010 WL 10838229, at *1 (C.D. Cal. Jan. 29, 2010) ("Congress enacted Section 343-1 for the purpose of establishing national uniformity in labeling rules and, to achieve that objective, expressly preempted state laws that impose additional and/or different requirements than those imposed under federal law").

Plaintiff's counsel has initiated successive, duplicate lawsuits, including the aforementioned *Johnson* and *Fernandez* cases.[7] These lawsuits create a real risk, if the plaintiffs' claims are allowed to proceed, of inconsistent state-law labeling directives that would make it impossible for Atkins to comply in a uniform manner as the federal statutes contemplate. *See, e.g.*, *Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) (affirming dismissal on preemption grounds, noting that ordering different requirements for food labels in different states would mean that "[m]anufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy").

Accordingly, Plaintiffs' state law claims with respect to Atkins quantitative "net carbs" statements and its calculation method are preempted by federal law.[8]

---

[7] Plaintiff's counsel filed this case and *Fernandez* shortly after, and in response to, another putative class action filed against Atkins in the Southern District of New York, which since has been dismissed. *See Garcia v. Atkins Nutritionals, Inc.*, No. 17-cv-05232-JFK (S.D.N.Y.).

[8] Plaintiff's GBL claims relating to Atkins quantitative "net carbs" statements and its calculation method also must be dismissed under the safe harbors provided by the statute. *See* GBL § 349(d) ("[I]t shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the

## II.     ALTERNATIVELY, THE COURT SHOULD DISMISS ALL OF PLAINTIFF'S CLAIMS PURSUANT TO THE DOCTRINE OF PRIMARY JURISDICTION.

This case should also be dismissed under the doctrine of primary jurisdiction because the

FDA, as the regulatory body explicitly tasked with regulating food labeling, should resolve any

potential issues regarding net carbs claims.  The doctrine of primary jurisdiction promotes proper

relationships between courts and regulatory agencies to ensure that these bodies do not work at

cross-purposes.  *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956); *see also Darbari v.*

*Lenox Hill Hosp,. Inc.*, 2011 WL 1226269, at *2-*3 (S.D.N.Y. Mar. 24, 2011) (dismissing

complaint on primary jurisdiction grounds).  Invocation of the primary jurisdiction doctrine is

appropriate "whenever enforcement of [a] claim requires the resolution of issues which, under a

regulatory scheme, have been placed within the special competence of an administrative body."

*W. Pac. R.R. Co.*, 352 U.S. at 64.

The Second Circuit has identified two purposes of the primary jurisdiction doctrine:

(1) to promote uniformity and consistency; and (2) to allow an agency to resolve issues in its

specialized area of expertise.  *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82, 90 (2d Cir. 2006).

To that end, the Second Circuit has identified four factors to be weighed in connection with the

doctrine:  (1) whether the question is within the conventional experience of judges or whether it

---

United States as such rules, regulations or statutes are interpreted by the federal trade
commission or such department, division, commission or agency or the federal courts."); *id.*
§ 350-d("[I]t shall be a complete defense that the advertisement is subject to and complies with
the rules and regulations of, and the statutes administered by the Federal Trade Commission or
any official department, division, commission or agency of the state of New York."); *Am. Home
Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 144 (S.D.N.Y. 1987) (noting that "New
York courts have construed [GBL § 350] to cover regulations by other federal agencies [besides
the Federal Trade Commission] as well" and dismissing GBL claims under safe harbor because
label was compliant with FDA standards) (citation omitted); *see also In re Fosamax
(Alendronate Sodium) Prods. Liab. Litig.*, 2013 WL 1558697, at *8 (D.N.J. Apr. 11, 2013)
("Fosamax is approved by the FDA, and therefore, this approval is a complete defense to a § 349
claim.").

involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion;  (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.  *Ellis*, 443 F.3d at 82-83.  It is not necessary that each factor weigh in favor of applying the doctrine for the doctrine to be properly invoked.  *See, e.g.*, *In re KIND LLC "Healthy and All Natural" Litig.*, 209 F. Supp. 3d 689, 695-698 (S.D.N.Y. 2016) ("Plaintiffs' 'all natural' claims are stayed pending the FDA's rulemaking process.").

Addressing the first two factors collectively, it is clear that the issue presented by Plaintiff's Amended Complaint, namely whether Atkins should be permitted to subtract sugar alcohols from total carbohydrates in connection with its "net carbs" calculations that are displayed on its product labeling and whether Atkins should be able to use the word "Only" in connection with those calculations, are both "particularly within the agency's discretion" and involves technical and policy considerations within the FDA's "particular field of expertise." When "Congress enacted the FDCA, it placed the authority to regulate food labeling within the jurisdiction of the FDA, which 'has extensively regulated food labeling in the context of a labyrinthine regulatory scheme.'"  *Haggag v. Welch Foods, Inc.*, 2014 WL 1246299, at *4 (C.D. Cal. Mar. 24, 2014) (citations omitted).  Indeed, the "FDCA empowers the FDA to prohibit labels that are "false or misleading in any particular."  *In re KIND LLC*, 209 F. Supp. at 695 (citation omitted).

As detailed above, the FDA has enacted specific rules regarding (1) the total carbohydrate calculation, and (2) the disclosure of dietary fibers, sugar alcohols, and their weights.  *See* Section I.A.1, *supra*.  The FDA very recently reexamined those rules, made changes to its regulations concerning "other carbohydrates," and responded to over 500

comments in and around these areas, including regarding "net carbs" labeling.  *See* Section I.C,

*supra*.  The FDA also has studied "net carbs" calculations going back at least a decade.  *See, e.g.*,

Ankrom Dec. Ex. K (Notice, 70 Fed. Reg. 18032-01, 2005 WL 779201, at 2-3 (Apr. 8, 2005))

(requesting public comment on claims made on food labels, including about net carbs);  Ex. L

(Notice, 70 Fed. Reg. 48423-01, 2005 WL 1957180, at 2 (Aug. 17, 2005)) (notifying OMB of

intent to collect information, including about "net carbs" claims); Ex. M (Ctr. for Food Safety &

Applied Nutrition Consumer Studies' Research 2001-2009 at 5) (studying reactions to

carbohydrate content claims including "net carbs").

  The FDA's repeated and continued review and consideration of "net carbs" and related

statements leave no doubt that the issues raised in the Amended Complaint are properly within

the FDA's regulatory authority, and any resolution of such issues requires its expertise.  Thus,

the FDA is in the best position to evaluate, in the first instance, any concerns about how Atkins

presents its "net carbs" calculation to consumers.  Of course, the FDA has already done so and

has implicitly confirmed that Atkins' "net carbs" statements are not misleading.  Ankrom Dec.

Ex. H (Ltr. from M. Landa, Deputy Director for Regulatory Affairs, FDA Center for Food Safety

and Applied Nutrition, Sept. 15, 2005).[9]

  The third factor also weighs in favor of finding primary jurisdiction.  Currently, Atkins

faces multiple lawsuits in three jurisdictions, all involving the same counsel, asserting claims

nearly identical to those asserted by Plaintiff.  If Plaintiff's claims are allowed to proceed here,

there is a real danger that Atkins could face inconsistent, state-law based labeling directives,

---

[9]  In 2004, the National Advertising Division ("NAD") of the Better Business Bureau similarly
considered a challenge to another company's "net carbs" statements and deferred to the FDA to
resolve these issues, citing its evaluation of "net carbs" statements and those of Atkins
challenged here.  Ankrom Dec. Ex. N.

making it impossible to comply in a uniform manner as the federal statutes contemplate.  *See, e.g.*, *Turek*, 662 F.3d at 426.

Finally, the fourth factor—prior application to an administrative agency—also weighs in favor of primary jurisdiction.   As detailed in Section I.C above, numerous applications have been made to the FDA concerning "net carbs" claims and calculations, including at least one that related specifically to Atkins' "net carbs" representation and calculation.

The decision in *Haggag* is particularly instructive here.  In that case, the plaintiff sought economic damages for an allegedly misleading label asserting that the product "Helps Support a Healthy Heart."  *Haggag*, 2014 WL 1246299, at *1.  The court examined current FDA regulations and determined that, like here, the FDA had evaluated and regulated similar issues involving claims that food or beverage products improved health.  *Id.* at *5.

Even though the FDA had not explicitly regulated the particular claim at issue, the court dismissed the Plaintiff's claims on primary jurisdiction grounds.  *Id.*  The court reasoned that if it were to determine whether the label at issue constituted a health claim, "it would find itself in a position of either having no set standard to apply, or announcing a standard and thereby overstepping its proper role," usurping the agency's interpretative authority.  *Id.* (citation omitted).

This Court likewise should defer to the FDA's expert and specialized knowledge. Evaluating Atkins' net carbs statement is a matter that the FDA is best qualified to make; indeed, it does regulate the listing and calculation of the underlying nutrients at issue here.  "[F]or a court

to act when the FDA has not—despite regulating extensively in this area—would risk

undercutting the FDA's expert judgments and authority." *POM Wonderful*, 134 S. Ct. at 2236.[10]

## III.   PLAINTIFF'S CLAIMS ALSO SHOULD BE DISMISSED FOR FAILURE TO SATISFY THE BASIC PLEADING REQUIREMENTS OF RULE 8.

In this action, Plaintiff does not provide any details as to when he made any purchases or

how much he allegedly paid for the Purchased Products.  (*See* Doc. 1 ¶ 52.)  Plaintiff also does

not allege the actual "net carbs" claims on any of the Purchased Products, and, with respect to

the "Counting Carbs" graphic, only alleges that an "identical or *substantially similar* claim

appears on every Atkins product identified in paragraph 20" of his Amended Complaint. (*Id.*

¶ 26 (emphasis added).)

It is axiomatic that a complaint must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of this

requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  A

complaint does not suffice if "it tenders 'naked assertion[s]' devoid of further 'factual

enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  In addition,

where factual contentions in a complaint are inconsistent and thus prevent a defendant from

properly responding, dismissal is appropriate.  *Friendship Med. Ctr., Ltd. v. Space Rentals*, 62

F.R.D. 106, 112 (N.D. Ill. 1974); *see also Mrla v. Fed. Nat'l Mortg. Ass'n*, 2016 WL 3924112, at

*5 (E.D. Mich. July 21, 2016) ("When inconsistent factual allegations are made for reasons other

than the pleader's uncertainty as to which allegation was true, dismissal is appropriate.").

---

[10] Additionally, the FDA is empowered to address Plaintiff's primary concern, if it deems it appropriate to do so.  *See, e.g., In re KIND LLC,* 209 F. Supp. 3d at 695 ("[T]he FDCA empowers the FDA to prohibit labels that are 'false or misleading in any particular.'").

It is impossible for Atkins to respond to Plaintiff's Amended Complaint without knowing which purportedly misleading statements purportedly caused Plaintiff his alleged injuries. Further, Plaintiff's claims are contradictory, as Plaintiff alleges that "Atkins uses the phrase 'Only Xg Net Carbs' in its labeling on products identified in paragraph 20" but the only label he actually includes in the Amended Complaint does not contain the "Only Xg Net Carbs" claim. (*Id.* ¶¶ 21-25, 50). Thus, Plaintiff's claims should be dismissed under Rule 8 because he does not provide sufficient plausible allegations regarding the claims made on the labels of the Purchased Products. *See e.g.*, *Board-Tech Elec. Co. v. Eaton Electric Holdings, LLC*, 2017 WL 4990659, at *1, *6 (S.D.N.Y. Oct. 31, 2017) (dismissing complaint pursuant to Rule 8 because the plaintiff failed to "specify which products [we]re at issue").

## IV. PLAINTIFF FAILS TO ADEQUATELY ALLEGE INJURY FOR HIS GBL CLAIMS.

Plaintiff's GBL claims require that he plead that Atkins "engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm." *Oscar v. BMW of N. Am., LLC*, 2012 WL 2359964, at *3 (S.D.N.Y. June 19, 2012); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). In his Amended Complaint, Plaintiff attempts to allege a cognizable injury by claiming that he "would not have purchased the [P]roducts if he had known that sugar alcohols impact blood sugar and the Atkins' products instead had carbohydrates which were significantly higher than the amount claimed by Atkins." (Doc. 26 ¶ 55.) Plaintiff also claims that he and members of his proposed class "spent money on products that they would not have purchased if they had known the true facts and information that Atkins concealed and misled consumers about, specifically that sugar alcohols do not impact blood sugar." (*Id.* ¶ 57.)

By alleging that he would not have bought the Purchased Products absent the allegedly

misleading statements contained on the labels, Plaintiff asserts a "deception as injury" theory—a theory that has been flat out rejected as insufficient to allege a claim for consumer fraud under New York law.  *See Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999); *see also Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 452 (E.D.N.Y. 2012) ("Courts have uniformly read *Small* to mean that Section 349 does not entitle a consumer to a refund of the price of a good or service whose purchase was allegedly secured by deception."), *aff'd*, 531 F. App'x 110 (2d Cir. 2013).

In opposition to this motion, Plaintiff likely will claim that he has sufficiently alleged injury because the Amended Complaint alleges in conclusory fashion that "Atkins charges a premium for its products and specifically markets them in a premium location of its retailers" (Doc. 26 ¶ 57.)  However, while well-pleaded allegations that a plaintiff paid a price premium may be sufficient to allege injury, Plaintiff here fails to provide any facts to support his allegation that Atkins charges a premium for the Purchased Products.  *See Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016).

*Izquierdo* is instructive on this point.  In *Izquierdo*, the named plaintiff alleged that he purchased mislabeled candy for a "premium price of $4.29 (or more)" and even went so far as to identify several other types of candies that were cheaper in order to demonstrate that the price he paid was a premium price.  Nonetheless, the court held that these allegations were insufficient to allege injury because "[s]imply . . . recit[ing] the word "premium" multiple times in the[] Complaint does not make Plaintiffs' injury any more cognizable."  *Id.* at *7; *see generally Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to plead a claim under Rule 8(a)).  Further, with respect to the comparison candies identified in the complaint, the court in *Izquierdo* held that such

25

comparison products did not suffice to allege injury under a "price premium" theory because they were different types of candy than the candy at issue. *Izquierdo*, 2016 WL 6459832, at *7. Finally, the court noted that the candy at issue was allegedly purchased at a movie theater concession stand and the Amended Complaint did not state whether the defendant manufacturer, as opposed to the theater, set the price and thereby "benefited from any price inflation." *Id.*

Here, too, Plaintiff conclusorily alleges that a "premium" price was paid for the Purchased Products, but does not include any factual support or identify any comparison product. Further, just as in *Izquierdo*, Plaintiff does not allege that Atkins, as opposed to the Wal-Mart location where he purchased the Purchased Products, established the unknown "premium" price he purportedly paid for the Purchased Products. Finally, Plaintiff does not even allege the price he paid for any of the Purchased Products, despite that information presumably being within his direct knowledge. Accordingly, Plaintiff has failed to allege a cognizable injury for his GBL claims.

## V.   PLAINTIFF'S BREACH OF WARRANTY CLAIMS ALSO SHOULD BE DISMISSED BECAUSE HE DID NOT GIVE ATKINS NOTICE OF THE ALLEGED BREACH.

"Under New York law, a buyer must provide the seller with timely notice of an alleged breach of warranty" to plead a claim for breach of warranty. *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *12 (N.D.N.Y Jan. 12, 2016) (citing N.Y. U.C.C. § 2–607(3)(a)). Plaintiff's Amended Complaint does not allege that he gave such notice to Atkins. This failure requires dismissal of his breach of warranty claim. *See id.* (dismissing plaintiff's breach of express warranty claims concerning a vodka manufacturer's product labels "because there is no allegation that he made a timely notification to [d]efendant of any breach of warranty"); *see also Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (dismissing the plaintiffs'

breach of warranty claims concerning dietary supplement labels for failure "to allege they

provided Walgreens with timely notice").

## VI.   **PLAINTIFF CANNOT SEEK INJUNCTIVE RELIEF.**

Plaintiff also lacks standing to assert any claims for injunctive relief.  To have such

standing, a plaintiff must allege a "likelihood of *future or continuing harm*."  *Pungitore v.*

*Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) (summary order) (emphasis in original).

Importantly, "[t]here is no exception to demonstrating future injury when the plaintiff is pursuing

a class action."  *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 564-65 (S.D.N.Y. 2016)

(dismissing claim for injunctive relief where the named plaintiff in a putative class action

alleging mislabeling on hair care and body wash products failed to "demonstrate[] a likelihood of

future injury").

Here, Plaintiff alleges that he would not have purchased Atkins products if he had known

that that the "carbohydrates" in the Purchased Products "were significantly higher than the

amount claimed by Atkins."  (Doc. 26 ¶¶ 55, 78)  Coupled with his extensive allegations

concerning his interpretation of the effect of sugar alcohols on blood sugar levels and the

research on which his conclusions are based (*see, e.g.*, *id.* ¶¶ 27-42, 46-47), the only reasonable

inference that can be drawn is that Plaintiff will not purchase Atkins products in the future, even

if the labels were modified as he requests.  Notably, nowhere in the Amended Complaint does

Plaintiff allege that he intends to purchase Atkins products again.  This prohibits him from

seeking injunctive relief.  *See, e.g.*, *Chang v. Fage USA Dairy Indus., Inc.*, 2016 WL 5415678, at

*5, *9 (E.D.N.Y. Sept. 28, 2016) (dismissing claim for injunctive relief in labeling class action

where one named plaintiff stated that he "would not have purchased the . . . Products" had he

known the label was misleading and because plaintiffs "have not alleged that they will purchase

27

the . . . Products in the future"); *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 418

(S.D.N.Y. 2015) ("In the instant action, Plaintiffs do not have standing to seek injunctive relief

because they have not alleged that they will purchase Defendants' almond milk labeled products

in the future").  Indeed, the *Johnson* and *Fernandez* plaintiffs were held to lack standing to seek

injunctive relief for precisely this reason.[11]  *Johnson*, 2017 WL 6420199, at *11-*12; *Fernandez*,

2018 WL 280028, at *14-*15.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended

Complaint should be granted, and Plaintiff's claims should be dismissed with prejudice.

Dated:  March 9, 2018
        New York, New York

                                        Respectfully submitted,

                                        By:    */s/ Sandra D. Hauser*
                                              Sandra D. Hauser
                                              Dentons US LLP
                                              1221 Avenue of Americas
                                              New York, New York 10020
                                              Tel: (212) 768-6700
                                              Fax: (212) 768-6800
                                              sandra.hauser@dentons.com

                                              Gregory T. Wolf (admitted *pro hac vice*)
                                              4520 Main Street, Suite 1100
                                              Kansas City, MO  64111
                                              Tel: (816) 460-2400
                                              Fax: (816) 531-7545
                                              gregory.wolf@dentons.com

---

[11] In *Johnson*, and also *apropos* here, the Court further held that the "[P]laintiff's standing to represent a class of purchasers extends only to those products he purchased." 2017 WL 6420199, at *3.

Michael J. Duvall (admitted *pro hac vice*)
601 South Figueroa Street
Suite 2500
Los Angeles, CA 90017-5704
Tel: (213) 623-9300
Fax: (213) 623-9924
michael.duvall@dentons.com

Grant J. Ankrom (admitted *pro hac vice*)
One Metropolitan Square
211 N Broadway, Suite 3000
St. Louis, MO 63102-2741
Tel: (314) 241-1800
Fax: (314) 259-5959
grant.ankrom@dentons.com

ATTORNEYS FOR DEFENDANT
ATKINS NUTRITIONALS, INC.