# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

JOSEPH COLELLA, individually and on
behalf of other similarly situated persons,

     Plaintiff,

     v.

ATKINS NUTRITIONALS, INC.,


     Defendant

Case No.: 17-cv-5867-KAM-SJB

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 7

STATEMENT OF FACTS ........................................................................................... 7

LEGAL STANDARD.................................................................................................. 10

ARGUMENT ............................................................................................................... 10

   I. PLAINTIFF'S "Xɢ NET CARBS" CLAIM IS NOT PREEMPTED ................... 10

     *A. "Xg Net Carbs" Is Not a Nutrient Content Claim* ........................................ *11*

     *B. Plaintiff's Claims Are Not Preempted Because Atkins' "Xg Net  Carbs" Representation*

     *Is False or Misleading.* ...................................................................................... *15*

     *C. Plaintiff's "Only Xg Net Carbs" and "Counting Carbs?" Claims Are  Not Preempted. 18*

   II. PRIMARY JURISDICTION RESTS WITH THIS COURT ................................. 18

   III. PLAINTIFF SATISIFIES HIS PLEADING OBLIGATIONS ........................... 23

     *A. Plaintiff Satisfactorily Pleads His New York Statutory Claims*....................... *24*

     *B. Plaintiff Satisfactorily Pleads His Warranty Claims*..................................... *26*

   IV. PLAINTIFF HAS STANDING TO PURSUE INJUNCTIVE RELIEF............................ 27

CONCLUSION............................................................................................................ 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ackerman v. Coca-Cola Co.*, No. 09-395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ..... 20, 25

*Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2013 WL 7044866 n.23 (E.D.N.Y. July 18, 2013)

.................................................................................................................................. 28, 29

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ..................................................................... 10

*Bates v. Down Agrosciences LLC,* 544 U.S. 431 (2005) ................................... 10, 15, 16

*Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015) ................... 28

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 10

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ............................................... 10

*Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991 (E.D.N.Y. Sept.

24, 2014) ................................................................................................................... 28

*Ellis v. Tribune Television Co.*, 443 F. 3d 71 (2d Cir. 2006)....................................... 22

*English v. Gen. Elec. Co.*, 496 U.S. 72 (1990) ..................................................... 11, 13

*Fernandez v. Atkins Nutritionals, Inc.*, 3:17-CV-01628-GPC, 2018 WL 280028 (S.D. Cal. Jan. 3,

2018) ...................................................................................................................... 7, 9

*Fischer v. Mead Johnson Labs.*, 41 A.D.2d 737, 341 N.Y.S.2d 257 (1st Dep't. 1973) .............. 26

*Friendship Med. Ctr., Ltd v. Space Rentals*, 62 F.R.D. 106 (N.D. Ill. 1974) .............................. 24

*Frito-Lay N. Am., Inc. All Natural Litig.*, No.12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug.

29, 2013) .............................................................................................................. 20, 21

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467 (S.D.N.Y.

2014) ...................................................................................................................... 21, 22

*Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59 (2d Cir. 1997) ........ 10

*Higgs v. Carver,* 286 F.3d 437 (7th Cir.2002) ................................................................ 23

*In re Initial Public Offering Securities Litigation,* 241 F.Supp.2d 281 (S.D.N.Y.2003) ............. 23

*Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) ........................................................................................................... 26

*Jernow v. Wendy's Intern., Inc.*, No. 07 Civ. 3971 (LTS) (THK), 2007 WL 4116241 (S.D.N.Y. Nov. 15, 2007) .................................................................................................. 25

*Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-CV-4213-MDH 2017, 2017 WL 6420199 (W.D. Mo. Mar. 29, 2017) ................................................................................... passim

*Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889(N.D. Cal. 2012) ........................................ 20

*Kennedy v. F.W. Woolworth Co.*, 205 A.D. 648, 200 N.Y.S. 121 (1st Dep't. 1923) ................. 27

*Krzykwa v. Campbell Soup Co.*, 946 F. Supp. 2d 1370 (S.D. Fla. 2013) .................................... 20

*Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009)................ 19, 21

*Medtronic, Inc. v. Lohr,* 518 U.S. (1996) ............................................................... 10, 11

*Miss Am. Org. v. Mattel, Inc.*, 945 F.2d 536 (2d Cir. 1991)........................................ 19

*Neitzke v. Williams*, 490 U.S. 319 (1989) .................................................................. 10

*Neri v. R.J. Reynolds Tobacco Co.*, No. 98–CV–371, 2000 WL 33911224 (N.D.N.Y. Sept.28, 2000) ........................................................................................................... 26

*Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142 (E.D.N.Y. 2015)............................................ 28

*Phillips v. Girdich,* 408 F.3d 124 (2d Cir.2005) ................................................................ 23

*Reid v. Johnson & Johnson*, 780 F.3d 966 (9th Cir. 2015)........................................... 20

*Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522 (S.D. Ohio 2011) .................................... 20

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) .......................................................... 10

*Salazar v. Honest Tea, Inc.*, 74 F.Supp.3d 1304 (E.D. Cal. 2014) ................................................ 14

*Silverstein v. R.H. Macy & Co.*, 266 A.D. 5, 40 N.Y.S.2d 916 (1st Dep't. 1943) ........................ 26

*Simmons v. Abruzzo,* 49 F.3d 83 (2d Cir.1995) ............................................................. 23

*Singleton v. Fifth Generations, Inc.*, No. 5:15-CV-474 (BKS/TWD), 2016 WL 406295

    (N.D.N.Y. Jan. 12, 2016) ................................................................................. 18

*Small v. Lorillard Tobacco Co.*, 252 A.D.2d, 1 (1st Dep't. 1998) ................................................ 26

*Small v. Lorillard Tobacco Co.*, Inc., 94 N.Y.2d 43 (1999) ........................................................ 25

*Swierkiewicz v. Sorema,* 534 U.S. 506 (2002) .............................................................. 23

*United States v. Western Pac. R.R. Co.*, 352 U.S. 59 (1956) ....................................................... 19

*Wynder v. McMahon,* 360 F.3d 73 (2d Cir. 2004) ......................................................... 23

## Statutes

§ 343(r)(2) .................................................................................................................. 16

21 U.S.C §343-1(a)(5) ................................................................................................ 11

21 U.S.C § 343(r)(1) ......................................................................................... 12, 14, 16

21 U.S.C. § 343(q)(1)(A)-(E) ................................................................................. 12, 13

21 U.S.C. § 343(r)(2)(A)(i) ........................................................................................ 15

21 U.S.C. § 343-1 .................................................................................................... 11

7 U.S.C. § 136v(b) ................................................................................................... 16

7 U.S.C. §136(q)(1)(a) .............................................................................................. 16

New York General Business Law § 349(d) .......................................................... 18, 25

PL 101-535 .............................................................................................................. 11

Section 2-607 of the UCC ........................................................................................ 27

**Rules**

Rule 8 ................................................................................................................................ 23

**Regulations**

21 C.F.R. § 101.13(i)(3) ................................................................................................ 15, 16

21 C.F.R. § 101.54(g)(2) ...................................................................................................... 14

21 C.F.R. § 101.9(c) ............................................................................................................. 13

40 C.F.R. § 156.10(a)(5)(ii) ................................................................................................ 16

58 Fed. Reg. 2302 (Jan. 6, 1993) ........................................................................................ 14

**Other Authorities**

62 Fed. Reg. 49859-60 (1997) ............................................................................................ 14

## INTRODUCTION

Plaintiff brings his Complaint against Atkins Nutritional's Inc., concerning the labeling used when it touts its products as having low "net carbs." Atkins claims that sugar alcohols, particularly maltitol, minimally impact blood sugar and should not be included in the consumer's carbohydrate count. However, Dr. Atkins himself and other scientists have refuted that claim. Therefore, Plaintiff claims that Atkins' labels and representations are misleading, false and contained material omissions.

Two courts have previously considered claims similar to Plaintiff's and denied parallel motions to dismiss in part: *Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-CV-4213-MDH 2017, 2017 WL 6420199 (W.D. Mo. Mar. 29, 2017) and *Fernandez v. Atkins Nutritionals, Inc.*, 3:17-CV-01628-GPC, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018). Nonetheless, Atkins seeks to re-litigate several of the same issues in its Motion; the Court should reject Atkins' invitation to reach a decision that conflicts with other federal courts. For the reasons set forth herein, Defendant's arguments are without merit. Accordingly, the Court should deny its Motion.

## STATEMENT OF FACTS

At the beginning of the low-carb diet regime that he founded, the late Dr. Robert Atkins publicly discouraged the consumption of certain sweeteners, including sugar alcohols. *See* Amend. Complaint [Doc. # 1] at ¶ 13. Atkins' website advised that sugar alcohols were among the "Carbs that count when you do Atkins," and advised that only dietary fiber grams should be subtracted from total carbs to determine the net carbs for the purpose of his diet. *Id*. at ¶ 16. This approach generally comports with scientific authority that sugar alcohols do, in fact, affect blood sugar levels, and are absorbed into the body at high rates. *See id*. at ¶¶ 30-32, 35-39.

Dr. Atkins later formed his eponymous corporation ("Atkins Nutritionals") to capitalize on his diet craze, developing and selling food products that were ostensibly compatible with the Atkins Diet. *See id.* at ¶¶ 10-13, 15. In fact, however, Defendant increasingly included sugar alcohols in its growing line of food products and Dr. Atkins conveniently reversed his position regarding whether these sugar alcohols, in particular, maltitol, should be counted as carbs. *Id.* at ¶¶ 13-15.

To account for the about-face, Dr. Atkins and his company essentially created a new marketing phrase. In 2002, Dr. Atkins advised, "Basically, you can deduct the grams of fiber from the food's total carb count. I call the net number of grams, 'The carbs that count when you do Atkins.'" *Id.* at ¶ 28. Defendant coined "net carbs" from Dr. Atkins' statement, and began to display "net carb" claims prominently on its products, often in much larger font than the mandated long-form nutrient disclosures on the back paneling. *See id.* at ¶¶ 21-22. "Net carbs" is not a scientific term – it is a marketing term invented by Atkins to persuade consumers to purchase Atkins-created foods as part of its diet plan.

However, independent scientists, the FDA, and even Atkins have expressed concern over misleading reference to sugar alcohols and net carbs in food packaging – with Atkins even stating in 2004 that it would discontinue using the term "net carbs" in its labeling because it is "imprecise." *Id.* at ¶¶ 43-50.

Nonetheless, since that time, Defendant continues to tout a low "net carb" total for many products – and consumers like Plaintiff have purchased food prominently labeled with "net carb" calculations that do not factor in sugar alcohols. *See id.* at ¶ 55. Plaintiff's Complaint alleges three primary violations: (1) the use of "Xg Net Carbs" where it fails to include sugar alcohols;

(2) the use of "Only Xg Net Carbs"; and (3) Atkins' "Counting Carbs?" label that states sugar alcohols "minimally impact blood sugar."

In *Johnson*, the Court considered these three allegations and dismissed them in part. The Court held that the first challenge – the phrase "Xg Net Carbs" – was preempted because it was a nutrient content claim. *See Johnson v. Atkins*, No. 2:16-CV-4213-MDH 2017, 2017 WL 6420199 2017 WL 6420199, *6-7 (W.D. Mo. Mar. 29, 2017); s*ee also Fernandez v. Atkins Nutritionals, Inc.*, 3:17-CV-01628-GPC, 2018 WL 280028, *6-7 (S.D. Cal. Jan. 3, 2018). The Court held that the latter two challenges concerning "Only Xg Net Carbs" and the "Counting Carbs?" label were not preempted and not subject to dismissal. *Johnson* at *7-9**.**

Furthermore, the Court held that although Atkins' use of the term "Xg Net Carbs" was preempted, a plaintiff "may nonetheless reference Defendant's 'Xg Net Carb' label in pursuing claims related to Defendant's 'Counting Carbs?' label" because "the labels are contextually linked . . ." *Id*. at *9.

Defendant's Motion occasionally uses the general phrase "net carbs" statements, but it does not specify the latter two claims; when it is specific, it relates only to the "Xg Net Carbs" claim. Thus, Defendant's Motion does not appear to implicate the latter two categories of Plaintiffs' claims and its Motion focuses exclusively on claims related to the "Xg Net Carbs" representation; it is silent on the other two. Accordingly, on its face, the Court should deny the Motion to the extent it does not seek relief related to "Only Xg Net Carbs" and the "Counting Carbs?" representations.

Additionally, the Court should deny the Motion to the extent Defendant's Motion does address "Xg Net Carbs" representations.

**LEGAL STANDARD**

A court should deny a motion to dismiss if a complaint states "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard simply "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). As stated in *Twombly:* "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." 550 U.S. at 556; *see also*, e.g., *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"). The court evaluates not whether a plaintiff will ultimately prevail "but whether she is entitled to offer evidence in support of the allegations in the complaint." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 62 (2d Cir. 1997).

In adjudicating a motion to dismiss for failure to state a claim, the Court "accept[s] the complaint's factual allegations, and all reasonable inferences that can be drawn from those allegations in the plaintiff's favor, as true." *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007).

**ARGUMENT**

**I.    PLAINTIFF'S "Xg NET CARBS" CLAIM IS NOT PREEMPTED**

When a defendant raises the defense of preemption, ***a court must begin its analysis with a presumption against preemption.*** *Medtronic, Inc. v. Lohr,* 518 U.S. at 470, 485 (1996); Cipollone v. Liggett Group, Inc., 505 U.S. 504, 518 (1992); *Bates v. Down Agrosciences LLC,* 544 U.S. 431, 449 (2005) (when presented with two plausible readings of an arguably preemptive federal law, courts have "a duty to accept the reading that disfavors pre-emption."). The assumption against preemption exists because "respect for the States as 'independent

sovereigns in our federal system"' leads to the assumption that "Congress does not cavalierly pre-empt state-law causes of action." *Id*. at 1195 n.3 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). "[T]he mere existence of a federal regulatory or enforcement scheme, even [a detailed one], does not by itself imply pre-emption of state remedies." *English v. Gen. Elec. Co.*, 496 U.S. 72, 87 (1990).

In its Motion, Defendant only argues Plaintiff's "Xg Net Carbs" claim is expressly preempted. However, Defendant's argument for preemption is misplaced for two reasons: (1) "Xg Net Carbs" is not a nutrient content claim, and (2) even if it is a nutrient content claim, Atkins' representation of "Xg Net Carbs" is false or misleading.

A.       "Xɢ Nᴇᴛ Cᴀʀʙs" Is Nᴏᴛ ᴀ Nᴜᴛʀɪᴇɴᴛ Cᴏɴᴛᴇɴᴛ Cʟᴀɪᴍ

Atkins hangs its preemption argument on three provisions the NLEA added to the FDCA: Sections 343-1(a)(5), 343(r)(1); and 343(q). However, in this case, the NLEA expresses the opposite. Rather than conveying a "clear and manifest purpose" in favor of preemption, the NLEA actually disclaims preemption except in very limited circumstances. It states: "***The Nutrition Labeling and Education Act of 1990 shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the Federal Food, Drug, and Cosmetic Act.***" NLEA, PL 101-535, at § 6(c)(1) (emphasis added). Thus, under the statute's plain language, no state requirement that is not of the same type as the federal provisions listed in section 403A (21 U.S.C. § 343-1) is preempted. 21 U.S.C  §343-1(a)(5), states:

> [N]o State . . . may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce – (5) any requirement respecting any *claim of the type described in section 343(r)(1)* of this title made in the label or labeling of a food that is not identical to the requirements of section 343(r) of this title[.]

21 U.S.C § 343(r)(1) which states:

A food shall be deemed misbranded – (r)(1) . . . if it is a food intended for human consumption which is offered for sale and for which a claim is made in the label or labeling of the food which expressly or by implication –

> A.  Characterizes the level of any nutrient which is of the type *required by paragraph (q)(1) or q(2) to be in the label* or labeling of the food unless the claim is made in accordance with subparagraph (2), or

> B.  Characterizes the relationship of any nutrient which is of the type required by paragraph (q)(1) or (q)(2) to be in the label or labeling of the food to a disease or a health-related condition unless the claim is made in accordance with subparagraph (3) or (5)(D).

> A statement of the type required by paragraph (q) that appears as part of the nutrition information required or permitted by such paragraph is not a claim which is subject to this paragraph and a claim subject to clause (A) is not subject to clause (B).

Thus, the preemption contemplated in section 343(r)(1) is limited to statements about either "any nutrient which is of the type *required by* paragraph (q)(1) or (q)(2) to be in the label or labeling of the food" or a claim "made in accordance with subparagraph (2)."

Section 343(q) – the provision incorporated by section 343(r) – provides that food labels must contain information concerning certain nutrients, including "total carbohydrates" and "complex carbohydrates." But it does not define "net carbs" or address them in any form. Similarly, it does not address or concern when manufacturers must include or consider sugar alcohol in calculating nutrition labels.

For example, under section 343(q)(1), the labeling requirements include: (1) serving size; (2) servings per container; (3) total calories derived in each serving size; (4) "the amount of the nutrients: Total fat, saturated fat, cholesterol, sodium, total carbohydrates, complex carbohydrates, sugars, dietary fiber, and total protein contained in each serving size:" and (5) any vitamin, mineral, or other nutrient required to be placed on a label before October 1, 1990. *See*

21 U.S.C. § 343(q)(1)(A)-(E). Thus, while section 343(q)(1) addresses carbohydrates, it does not concern "net carbs" – a marketing term created by Atkins to sell products.

The next subsection referenced by 343(r) – section 343(q)(2) – also does not govern "net carbs" in any way. Instead, it authorizes the FDA to add or remove nutrients from the required list by regulatory action. In this case, the corresponding regulation is 21 C.F.R. § 101.9(c); it also does not define, govern, or discuss "net carbs."

Section 101.9(c) briefly discusses sugar alcohols. *See* id at § 101.9(c)(6)(iv). But it does not address whether manufacturers should or should not calculate sugar alcohols in "net carbs" – in fact, the regulation never discusses "net carbs" at all. Furthermore, it provides that any disclosures related to sugar alcohols are "VOLUNTARY." *Id*. (emphasis in original).

Therefore, the applicable regulations – like the statutes governing food labeling – never address, define, or discuss "net carbs." And they do not set forth standards governing when the term can or cannot be used by manufacturers.

To the limited extent the regulations touch on the allegations in the Complaint, those regulations (1) are explicitly identified as "VOLUNTARY," meaning that the federal government has not mandated (or disallowed) their use, and (2) do not discuss sugar alcohols vis-à-vis "net carbs" which is the primary crux of this litigation. 21 C.F.R. § 101.9(c)(6)(iv).

Nonetheless Atkins claims that its "net carbs" statements are "express nutrient content" claims covered under 343(r), but chooses to ignore the unambiguous language of 343(r) that ties such claims to "nutrients" that are "of the type *required by* paragraph (q)(1) or (q)(2)." Simply put, a "net carb" is not a nutrient "*required by* paragraph (q)(1) or (q)(2)." Particularly where that term does not appear in the statutes or their corresponding regulations.

13

Defendant cites *Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-CV-4213-MDH (W.D. Mo. Mar. 29, 2017) and *Fernandez v. Atkins Nutritionals, Inc.*, 3:17-CV-01628-GPC (S.D. Cal. Jan. 3, 2018) for support of its contention. Both cases held that statements of "Xg Net Carbs" constituted a nutrient content claim and, therefore, that particular representation is preempted by § 343(r). However, *Johnson* also held that other claims concerning "net carbs" are not preempted, including "Only Xg Net Carbs."

Respectfully, to the extent *Johnson* and *Fernandez* held that any representation concerning "Xg Net Carbs" was preempted, those opinions were incorrect. Regardless of whether the Defendant's marketing invention of "net carbs" is a "nutrient" in any sense, it is not protected by § 343(r) because it is not a "nutrient" that is of the type "*required by* paragraph (q)(1) or (q)(2) to be in the label or labeling of the food.[1]

Further, Atkins' contention is contrary to the purpose of the NLEA. The stated purpose of the NLEA is "to eliminate consumer confusion by establishing definitions for nutrient content claims that are consistent with the terms defined by the Secretary[.]" 58 Fed. Reg. 2302 (Jan. 6, 1993) (FDA's explanation of initial rules passed to implement NLEA). Atkins' version would enhance consumer confusion – not eliminate it.

Under the plain language of section 343(r)(1), any nutrient content claim about a nutrient that is not "*required by paragraph (q)(1) or (q)(2) to be in the label*" must be "made in accordance with subparagraph (2)," the very first requirement of which states that such a nutrient

---

[1]      Furthermore, *Johnson* misconstrues the significance of the FDA's comments in its rule-making process for dietary supplements by citing 62 Fed. Reg. 49859-60 (1997). *See Johnson* at *5. But that regulation applies only to dietary supplements – not carbohydrates in any form, much less "net carbs." *Johnson* further cited *Salazar v. Honest Tea, Inc.*, 74 F.Supp.3d 1304, 1313 (E.D. Cal. 2014), to buttress its reliance on the Federal Register. *Johnson* at *5. But *Salazar* was a case about "antioxidants," another term that is defined by the FDA. *See* 21 C.F.R. § 101.54(g)(2).

content claim "may be made only if the characterization of the level made in the claim uses *terms which are defined* in the regulations of the Secretary." 21 U.S.C. § 343(r)(2)(A)(i).

FDA regulations define the term "carbohydrate." But neither "net" nor "net carbohydrate" is defined, again demonstrating that the NLEA does not reach "net carbs" or Atkins' use of the term. In sum, express preemption does not apply, the term "Xg Net Carbs" is not a nutrient content claim where the applicable statutes do not reference, define, or govern its use.

**B.     PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BECAUSE ATKINS' "XG NET CARBS" REPRESENTATION IS FALSE OR MISLEADING.**

If, however, "Xg Net Carbs" is a nutrient content claim, it is undisputed that such a claim cannot be false or misleading. *See*, *e.g.*, Defendant's Motion to Dismiss at p. 9 (express nutrient content claims are not preempted if the claims are "false or misleading in any respect."); *see also* Defendant's Exhibits A, E, H, and I.

But Plaintiff alleges that the Atkins' "Xg Net Carbs" statement is false and misleading because it conveys a "net carbs" calculation that incorrectly fails to include sugar alcohols and, when read in tandem with the "Counting Carbs" representation, suggests to consumers that sugar alcohols do not impact blood sugar.

Thus, Plaintiff's claim is expressly allowed as the Supreme Court held in *Bates*. *Bates*, 544 U.S. at 431 (2005). *Bates* involved claims brought by Texas peanut farmers regarding the label on the pesticide Strongarm, which stated "use of Strongarm is recommended in all areas where peanuts are grown." The farmers argued that the label was misleading because the pesticide actually stunted the growth of peanuts in soils with a pH above 7.0. *Id.* at 435. Defendant argued that the plaintiffs' claims were preempted under the Federal Insecticide, Fungicide, and Rodenticide Act, which contains a clause exactly like 21 C.F.R. § 101.13(i)(3):

under FIFRA, a pesticide is misbranded if "its labeling bears any statement... which is false or misleading in any particular." 7 U.S.C. §136(q)(1)(a); 40 C.F.R. § 156.10(a)(5)(ii) (emphasis added); *see Bates,* 544 U.S. at 438. FIFRA also contains a preemption clause just like the NLEA's – it also prohibits state-law labeling and packaging requirements that are "in addition to or different from" the requirements under FIFRA. 7 U.S.C. § 136v(b). In *Bates*, the Supreme Court held:

> Petitioners argue that their claims based on fraud and failure to warn are not pre-empted because these common-law duties are equivalent to FIFRA's requirements that a pesticide not contain 'false or misleading' statements, or inadequate instructions or warnings. We agree... [and] hold that state law need not explicitly incorporate FIFRA' s standards as an element of a cause of action in order to survive pre-emption.

*Bates,* 544 U.S. at 447.

Section 343(r)(1) prohibits nutrient content claims "unless the claim is made in accordance with" § 343(r)(2). Further, the FDA has promulgated rules regarding nutrient content claims, including the requirement that express nutrient content claims not be "false or misleading in any respect." 21 C.F.R. § 101.13(i)(3).

Plaintiff is not alleging that Defendant cannot use the representation "Xg Net Carbs." Instead, Plaintiff has alleged that Defendant's labeling is false and misleading in that its term "net carbs" is based on false assertions that sugar alcohols "don't break down and convert to blood sugar," "do not impact blood sugar," and do not "significantly impact your blood sugar level." Complaint at ¶15. An expert associated with Defendant publicly admitted, "It's a big misconception to say maltitol does not raise blood sugar." *Id*. at ¶ 29. Defendant even publicly conceded that food labels concerning sugar alcohols were misleading, announcing in 2004 it would discontinue using the term because it is "imprecise." *Id*. at ¶ 35. Thus, taking the facts alleged in the Complaint as true and drawing all reasonable inferences in Colella's favor, this

16

Court cannot conclude that Atkins' "Xg Net Carbs" representation is not false or misleading in any respect.

Defendant cites numerous FDA letters concerning "net carbs" as evidence that the FDA – through its inaction – has regulated and permitted the term "net carbs."

To the contrary. Defendant's Exhibits A, E, H, and I are letters from the FDA reinforcing Plaintiff's position that all labeling claims must be truthful and not misleading. For example, in Defendant's Exhibit A, the FDA informs a food manufacturer, "The statement 'Only 2g Digestible Carbs' is an *unauthorized* nutrient content claims. FDA has not defined this claim for use on food products."

In Exhibit E, the FDA informs a consumer organization that it has "not generally objected to the use of 'net carbohydrate' type information on food labels *if the label adequately explains how the terms are used so that it would not be false or misleading to consumers*." In Exhibit H, the FDA re-iterates that it is not "generally objecting to additional net-carbohydrate type *statements that are truthful and not misleading*[.]"

Defendant's Exhibit I is directly on point to this case. In it, the FDA informs a manufacturer who has made a "net carbs" claim that both "*[t]he statement and explanation must be truthful and not misleading.*" Here, Plaintiff has alleged that both the "Xg Net Carbs" representation and its corresponding explanation about the minimal impact of sugar alcohols are misleading.

Ultimately the Court should disregard the FDA letters submitted by Atkins because they do not have preemptive effect. But even if the Court considers them, the letters indicate that net carbs claims are impermissible when the statements allegedly are false or misleading. Therefore, based on the complete facts and in light of the presumption against preemption, Plaintiff's claims

arguing that Atkins' "net carbs" statements are false or misleading as used here are not preempted.

     **C.**       **PLAINTIFF'S "ONLY XG NET CARBS" AND "COUNTING CARBS?" CLAIMS ARE NOT PREEMPTED.**

Again, Atkins' Motion focuses exclusively on the "Xg Net Carbs" representation – it does not speak to the other two claims at issue. *Johnson* and *Fernandez* held these claims are not preempted and this Court's decision should comport with that reasoning for the reasons stated therein.[2]

## II.    PRIMARY JURISDICTION RESTS WITH THIS COURT

Atkins also cites to the doctrine of primary jurisdiction as grounds to dismiss Plaintiff's claims. In its support, Defendant insists there is "a real danger that Atkins could face inconsistent, state law-based labeling directives." Defendant's Motion to Dismiss at p. 21. But *Johnson* and *Fernandez* rejected this exact argument on the same facts.

*Johnson*, finding that "[t]his factual issues does not raise questions requiring technical or specialized expertise" because "every day courts decide whether conduct is misleading." *Johnson*, at *9. (internal quotations omitted). *Fernandez*, concluding that "staying or dismissing this case under the primary jurisdiction doctrine is inappropriate because the primary question presented by this case neither requires resolution of an issue of first impression nor is it a

---

[2]    Defendant also contends that Plaintiff's GBL claims relating to Atkins quantitative "net carbs" statements and its calculation method must be dismissed under the safe harbors provided by that statute. Not so. *See Singleton v. Fifth Generations, Inc.*, No. 5:15-CV-474 (BKS/TWD), 2016 WL 406295, at *8 (N.D.N.Y. Jan. 12, 2016). In *Singleton*, the defendant asserted that the labels at issue were approved by regulatory agencies and therefore, the plaintiff's claims were barred by New York General Business Law § 349(d). *Id.* at * 4. The plaintiff argued that the defendant's conduct was not protected under the safe harbor provision because no federal or state law or regulation specifically permitted Defendant to *deceptively label its product***.** *Id.* at *5(emphasis added). The plaintiff further argued that the approval of the label only showed that the agency took the defendant's word at face value. *Id.* Therefore, the court found that it was not clear at the motion to dismiss stage that the approval of the label was sufficient to apply the safe harbor provision. *Id.* at *8. The same is true in this case.

particularly complicated issue that Congress has committed to a regulatory agency." *Fernandez*, at \*11. (internal quotations omitted).

This Court should reach a decision that is consistent with *Johnson* and *Fernandez*. Primary jurisdiction is not grounds for dismissal; "[p]rimary jurisdiction ... applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]" *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956). The doctrine only has effect "when Congress has delegated initial or exclusive responsibilities to an administrative agency to resolve certain issues in complex matters in which the agency has special competence." *Miss Am. Org. v. Mattel, Inc.*, 945 F.2d 536, 544 (2d Cir. 1991). Here, section 343-1(a) of the NLEA show that Congress did not intend for the FDA to have exclusive authority over food labeling. The primary jurisdiction doctrine should not be used to override Congress' intent that state authority would coexist with FDA authority in areas not covered by section 343-1(a).

Determining whether label statements are misleading or deceptive under consumer protection laws is not an issue outside "the conventional experience of judges." *Western Pac. R.R. Co.*, 352 U.S. at 64; *see Lockwood*, 597 F. Supp. 2d at 1035 ("[T]his is not a technical area in which the FDA has greater technical expertise than the courts--every day courts decide whether conduct is misleading."). Because the issue here is not one that requires a federal agency's "special competence," the primary jurisdiction doctrine is inapplicable.

The question whether Defendant has marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle and is not an appropriate basis for invoking the primary jurisdiction doctrine.

Further, numerous courts, including this one, reviewing state law claims based on misleading or deceptive food labels have declined to apply the doctrine, and have concluded that such consumer protection claims are squarely within the court's competence and experience. *See Ackerman v. Coca-Cola Co.*, No. 09-395, 2010 WL 2925955, *14 (E.D.N.Y. July 21, 2010) ("The question whether defendants have violated FDA regulations and marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine."); *Reid v. Johnson & Johnson*, 780 F.3d 966, 967 (9th Cir. 2015) ("The issue that this case ultimately turns on is whether a reasonable consumer would be misled by [the defendant's] marketing, which the district courts have reasonably concluded they are competent to address in similar cases."); *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No.12-MD-2413, 2013 WL 4647512, *8 (E.D.N.Y. Aug. 29, 2013) ("the reasonable consumer inquiry upon which some of the claims in this case depends is one to which courts are eminently well suited, even well versed."); *Krzykwa v. Campbell Soup Co.*, 946 F. Supp. 2d 1370, 1374-75 (S.D. Fla. 2013) ("Defendant's arguments that the claims should be dismissed under the primary jurisdiction doctrine [are] also misplaced because the FDA has repeatedly declined to adopt formal rule-making" on the matter); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898-99(N.D. Cal. 2012) ("this case is far less about science than it is about whether a label is misleading. Plaintiff's allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts."); *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 530 (S.D. Ohio 2011) ("this is not a technical area in which the FDA has greater technical expertise than the courts – [as] every day courts decide whether conduct is misleading.") (quoting *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009) (alteration in original).

While determining whether the primary jurisdiction doctrine applies, the court considers the four following factors: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of experience; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 476 (S.D.N.Y. 2014).

All four factors weigh against the application of the primary jurisdiction doctrine. Regarding factor one and two, the main issue Plaintiff raises in this case is whether the use of Atkins' representations are deceptive or misleading. While Defendant tries to bury their argument with FDA letters, both the court in *Johnson* and *Fernandez* have already held that primary jurisdiction doctrine was not applicable. Further both courts found that the issues in this case are well within their discretion. *See Johnson* at *9; *Fernandez* at *11.

This Court agrees. *See In re Frito-Lay N. Am.*, *Inc. All Natural Litig.*, No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512 at *8 (E.D.N.Y. Aug. 29, 2013) ("This case is far less about science than it is about whether a label is misleading.") (internal citations omitted). Therefore, these factors weigh against the application of the primary jurisdiction doctrine.

Regarding the third factor, the danger of inconsistent rulings. Defendant contends that this factor weighs in favor of finding primary jurisdiction. Defendant is explicitly wrong and its own Motion is indicative of this. Defendant specifically points out that Atkins currently faces multiple lawsuits in three jurisdictions (New York, California and Missouri), all involving the same counsel and asserting claims nearly identical to those asserted by Plaintiff. Defendant's Motion to Dismiss at p. 21. However, Defendant fails to point out that the other courts have

ruled *against* primary jurisdiction. *See Johnson* at *9; *Fernandez* at *11. Therefore, to avoid inconsistent rulings, this Court should comport with the previous decisions on primary jurisdiction – not create dissonance. This factor weighs heavily against applying the primary jurisdiction doctrine, especially considering other districts would conflict on the *nearly identical claims*.

Finally the fourth factor, prior application to administrative agency. Unsurprisingly, this factor weighs no differently than the others. As Defendant points out, numerous applications have been made to the FDA concerning "net carbs" claims and calculations. However, the FDA has declined to permit "net carb" claims. Further, the "FDA has not defined the claim for use on food products." *See* Defendant's Ex. A. Moreover, "a court need not apply the doctrine where resort to the agency would plainly be unavailing in light of its manifest opposition or because it has already evinced its "special competence" in a manner hostile to petitioner." *Ellis v. Tribune Television Co.*, 443 F. 3d 71, 90 (2d Cir. 2006) (internal citations omitted). Therefore, since the FDA has chosen not to define the term, it would be unavailing to defer to the agency and this factor weighs against the application of the primary jurisdiction.

*Goldemberg* is instructive on this point. In *Goldemberg*, the plaintiff brought an action against the defendant alleging the representations on the products packaging and website were misleading. 8 F. Supp. 3d at 471. The defendant asked the court to dismiss based on the primary jurisdiction doctrine and the court found the factors weighed against application of the doctrine and declined to dismiss the case on that basis. *Goldemberg*, 8 F. Supp. 3d at 477-478.

Like *Goldemberg*, Plaintiff brings an action alleging the representations on products are misleading, and – again like *Goldemberg* – the factors considered for the application of the primary jurisdiction doctrine weigh profoundly against it. Therefore, this Court should follow the

lead of many other courts facing similar arguments, including *Johnson* and *Fernandez*, and decline to invoke the doctrine of primary jurisdiction.

## III.    PLAINTIFF SATISIFIES HIS PLEADING OBLIGATIONS

Rule 8(a) of the Federal Rules of Civil Procedure requires that the plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a) does not require "a plaintiff to plead the legal theory, facts, or elements underlying his claim." *Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005). "To comply with Rule 8, plaintiff need not provide anything more than sufficient notice to permit defendant to file an answer." *In re Initial Public Offering Securities Litigation,* 241 F.Supp.2d 281 (S.D.N.Y.2003). The only requirement is that a complaint allege the "bare minimum facts necessary to put the defendant on notice of the claim so that [it] can file an answer." *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002). Fair notice is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Wynder v. McMahon,* 360 F.3d 73, 79 (2d Cir. 2004) (*quoting Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) This notice pleading standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *See Swierkiewicz v. Sorema,* 534 U.S. 506 (2002). *Conley, supra* ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

*Johnson* and *Fernandez* both considered the sufficiency of the plaintiff's allegations in those cases and found they were sufficient under comparable state law. *See Johnson* at *10; *Fernandez* at *12. This Court, faced with similar allegations, should reach a similar result.

Defendant's cited cases are inapplicable. In *Friendship Medical Center*, the plaintiff stated two inconsistent counts in its complaint. The plaintiff stated in Count I that it made an offer to have defendant Space Rentals construct an addition to its medical facility which defendant never accepted. *Friendship Med. Ctr., Ltd v. Space Rentals*, 62 F.R.D. 106, 112 (N.D. Ill. 1974). However, in Count II, which was not pled in the alternative, the plaintiff stated that defendant promised it would provide the plaintiff with a new medical center. *Id*. The court held that the inconsistency between the two counts prevented the defendant from properly responding; however, the court only dismissed one count, not both. *Id*.

Here, Defendant is contending that Plaintiff alleges two inconsistent *facts, not counts*. Defendant argues that the only label contained in Plaintiff's Amended Complaint fails to include the "Only Xg Net Carbs" statement. But the label does show the "Counting Carbs?" calculation.[3]

Therefore, Defendant's arguments attacking the sufficiency of the pleading is misguided. Plaintiff's Amended Complaint contains detail as to the deception at issue here, listing the misrepresentations as well as providing detail regarding the specific purchases made by Plaintiff. The Amended Complaint contains more than enough information for Defendant to understand the allegations against it and to be able to answer. Accordingly, Defendant's argument that the Complaint fails to meet the pleading standard must be rejected.

## A.     PLAINTIFF SATISFACTORILY PLEADS HIS NEW YORK STATUTORY CLAIMS

Defendant argues that Plaintiff does not plead enough facts alleging an injury to support his GBL claims, and seeks to dismiss Plaintiff's claim on that basis; Defendant is wrong. "Injury

---

[3]     In *Johnson v. Atkins Nutritionals. Inc.*, No. 16-CV-04213, 2017 WL 6420199, *6-9 (March 24, 2017) the Court held that Plaintiff could pursue his claims for the Atkins products related to these representations. While, the Court found that the "Xg Net Carbs" representation is preempted, the "Plaintiff may nonetheless reference Defendant's "Xg Net Carb" label in pursuing claims related to the Defendant's 'Counting Carbs?' label" because they are contextually linked . . ." *Id*. at *9.

is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." *Ackerman*, 2010 WL 2925955, *23 (citing *Jernow v. Wendy's Intern., Inc.*, No. 07 Civ. 3971 (LTS) (THK), 2007 WL 4116241, at *3 (S.D.N.Y. Nov. 15, 2007)). The Amended Complaint alleges facts perfectly consistent with *Ackerman.* Specifically, the Complaint contains allegations that "Plaintiff and members of the Class have been economically damaged by their purchase of Atkins' products, in that they spent money on products that they would not have purchased if they had known the true facts and information that Atkins concealed and mislead consumers about, specifically that sugar alcohols do not impact blood sugar." Amend. Complaint at ¶ 57.

Further, Plaintiff alleges, "Atkins charges a premium for its products and specifically markets them in a premium location of its retailers; thus, Plaintiff and members of the Class paid more than they normally would have for comparable products. In this respect, Plaintiff and members of the Class have overpaid for Atkins products contain[ing] the "Net Carbs" calculation." *Id*. Moreover, Plaintiff alleges that he would not have purchased the products if he had known that sugar alcohols impact blood sugar and the Atkins' products instead had carbohydrates which were significantly higher than the amount claimed by Atkins. *Id*. at 55.

Defendant's contention that *Small v. Lorillard Tobacco Co.*, Inc., 94 N.Y.2d 43 (1999) compels a contrary conclusion is unconvincing. In *Small*, the plaintiff sued tobacco companies, alleging that they had used deceptive advertisements to sell their cigarettes to New Yorkers. *Id*. at 51. The plaintiffs alleged they were injured based upon the addictive nature of cigarettes. *Id*. The appellate court rejected the plaintiffs' theory that the mere purchase of the product was an injury because the cornerstone of the plaintiffs' legal claims was addiction and the plaintiffs

failed to allege that the cost of the product was related to the misrepresentation. *Small v. Lorillard Tobacco Co.*, 252 A.D.2d, 1,7 (1ˢᵗ Dep't. 1998).

*Izquierdo* also is not instructive. In *Izquierdo*, the plaintiffs did not allege that they paid a higher price for the candy than they otherwise would have, absent deceptive acts. *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, *7 (S.D.N.Y. Oct. 26, 2016). The plaintiff merely pointed out that the candy is more expensive per ounce than other sweets on the market. Moreover, the court found the complaint still failed to state the defendant movie theater and not the ultimate candy seller benefits from the price inflation. *Id*. Here, Plaintiff alleges Atkins' charges a premium price and that he paid more than he normally would have for comparable products. Amend. Complaint at ¶ 57.

Therefore, Plaintiff does not assert a "deception as injury" theory, but rather, sufficiently alleges an injury for a damages claim under New York's consumer protection law.

**B.     PLAINTIFF SATISFACTORILY PLEADS HIS WARRANTY CLAIMS**

Defendant argues that Plaintiff's claim for breach of express warranty fails because Plaintiff did not provide notice of the breach. Defendant's Motion at p. 26. Defendant's argument fails to consider the line of New York Cases that create an exception to the notice requirement for retail customers. *Neri v. R.J. Reynolds Tobacco Co.*, No. 98–CV–371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept.28, 2000); *See also Fischer v. Mead Johnson Labs.*, 41 A.D.2d 737, 737, 341 N.Y.S.2d 257 (1ˢᵗ Dep't. 1973)(overturning the Special Term and holding "the prescription of timely notice under the code provisions is to be applied, if at all, differently in commercial and retail sales situations."); *Silverstein v. R.H. Macy & Co.*, 266 A.D. 5, 9, 40 N.Y.S.2d 916 (1ˢᵗ Dep't. 1943) (finding that for the complaint to be sufficient, Plaintiff did not need a notice under section 130 of the Personal Property Law because the notice had no relation

to goods for immediate human consumption. The Court further held that to require a complaint which indicates a notice of rejection or claim of damage within a reasonable time on account of defect of edible goods in a retail transaction, "would strain the rule beyond a breaking point of sense or proportion to its intended object."); *Kennedy v. F.W. Woolworth Co.*, 205 A.D. 648, 649, 200 N.Y.S. 121 (1st Dep't. 1923) (holding the similar provision of section 130 of Personal Property law, which was the predicate for section 2-607 of the UCC, was not applicable in situations involving goods sold for human consumption).

Even if the exception is inapplicable, Defendant had notice that a defect had manifested and had opportunity to cure when another consumer filed. *See Johnson*.[4] Therefore, Plaintiff's breach of express warranty claim is properly pled and Defendant's Motion to Dismiss should be denied.

## IV.    PLAINTIFF HAS STANDING TO PURSUE INJUNCTIVE RELIEF

Defendant contends that Plaintiff lacks standing because the "only reasonable inference" is that Plaintiff will not purchase Atkins products in the future. Defendant's Motion to Dismiss at p. 27.  However, Plaintiff never alleged that he will not purchase Defendant's products again. He merely states that he would not have purchased the products if he had known they were higher in so-called "net carbs" than the amount claimed by Atkins. Amend. Complaint at ¶ 55. Plaintiff would continue to purchase Atkins products if the "net carbs" were actually precise. Unless injunctive relief is granted, Plaintiff will never be able to know whether a statement on the package as to the "net carbs" is true.

---

[4]       Considering the notice requirement in *Johnson*, the court held that the plaintiff in that case "is not required to give notice where it is futile. Defendant could not correct the products and make them conform to the label because Plaintiff already consumed the products." *Johnson*, at *10.

Further, district courts in the Second Circuit have held in consumer protection cases that even though the plaintiff was aware of the conduct the plaintiff would have standing to seek injunctive relief. *See Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 157 (E.D.N.Y. 2015); *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (holding that the plaintiff had standing to seek injunctive relief even though the plaintiff alleged that he would not purchase the deceptive product again); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014) (same); *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (same).

Some courts have determined that, because a consumer cannot seek to enjoin deceptive conduct until they become aware of the conduct by suffering an injury, holding that a consumer does not have standing to seek injunctive relief would effectively bar consumers from ever being able to seek injunctions in false advertising cases. *See Belfiore*, 94 F. Supp. 3d at 445 (holding that the plaintiffs had standing to seek injunctive relief based on their false advertising claims "because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief' " (quoting *Ackerman*, 2013 WL 7044866, at *15 n.23)); *Ackerman*, 2013 WL 7044866, at *15 (noting that if standing for injunctive relief were denied because a plaintiff had become aware of an allegedly deception, then "injunctive relief would never be available in false advertising cases, a wholly unrealistic result" (citation omitted)).

These courts have also held that because the plaintiffs are still exposed to the allegedly deceptive statements, their injury is ongoing. *See Delgado*, 2014 WL 4773991, at *14 (finding that the plaintiffs had standing to seek injunctive relief because the plaintiffs would be "expos [ed]" to the allegedly ongoing and misleading statements in the future); *Ackerman*, 2013 WL

28

7044866, at *15 n.23 ("Plaintiffs seek to be relieved from defendants' misleading and deceptive practices in the future, and the fact that they discovered the alleged deception years ago does not render defendants' advertising or labeling any more accurate or truthful. This is the harm New York's and California's consumer protection statutes are designed to redress."). Therefore, Plaintiff has standing to pursue injunctive relief.

## CONCLUSION

For the forgoing reasons, the Court should deny Defendant's Motion to Dismiss. If, however, the Court grants Defendant's Motion in part, then it should do so in a manner consistent with the previous order in *Johnson*.


Dated: March 23, 2018                     Respectfully submitted,

                                          **WILLIAMS DIRKS DAMERON**

                                          ___*/s/ Matthew L. Dameron*___
                                          Matthew L. Dameron
                                          (admitted *pro hac vice*)
                                          **WILLIAMS DIRKS DAMERON LLC**
                                          1100 Main Street, Suite 2600
                                          Kansas City, Missouri 64105
                                          Tel.: 816.945.7110
                                          Fax: 816.945.7118
                                          *matt@williamsdirks.com*

David A. Straite                          Jay Barnes
**KAPLAN FOX & KILSHEIMER LLP**           (admitted *pro hac vice*)
850 Third Avenue                          **BARNES & ASSOCIATES**
New York, NY 10022                        219 E. Dunklin Street
Tel: 212.687.1980                         Jefferson City, MO 65101
Fax: 212.687.7714                         Tel.:573.634.8884
*dstraite@kaplanfox.com*                  Fax:573.635.6291
*Local Counsel for Plaintiff*             *Jaybarnes5@zoho.com*
                                          *Lead Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of March 2018, the foregoing document was emailed to counsel of record for Defendant.

_____*/s/ Matthew L. Dameron*_____

Attorney for Plaintiff